UNITED STATES COURT OF INTERNATIONAL TRADE

TAU-KEN TEMIR LLP, and
JSC NMC TAU-KEN SAMRUK,

                    Plaintiffs,

MINISTRY OF TRADE AND INTEGRATION OF
THE REPUBLIC OF KAZAKHSTAN,

                    Plaintiff-Intervenor,

          v.

UNITED STATES,

                    Defendant,

         and

GLOBE SPECIALTY METALS, INC., and
MISSISSIPPI SILICON LLC,

                    Defendant- Intervenors.

Before: Leo M. Gordon, Judge

Court No. 21-00173

**PLAINTIFF TAU-KEN TEMIR LLP ET, AL. (TKT)**
**RULE 56.2 BRIEF FOR JUDGMENT ON THE AGENCY RECORD**

Peter Koenig, Esq.
Squire Patton Boggs
2550 M Street NW
Washington DC 20236
202 669 1901
peter.koenig@squirepb.com

July 21, 2021

Counsel to TKT

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................. iii

RULE 56.2(c)(1) STATEMENT ........................................................ 1

STANDARD OF REVIEW ............................................................... 3

ARGUMENT ................................................................................. 4

I.    COMMERCE'S FAILURE TO CONSIDER TKT'S QUESTIONNAIRE RESPONSE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE NOT IN ACCORDANCE WITH LAW ........................................ 4

    A.    Commerce Violated Its Regulations In Failing To Consider TKT'S Questionnaire Response ........................................................... 4

    B.    In This Investigation, Commerce Admits That It Had Time To Consider TKT's Questionnaire Response Without Burden. Commerce's Failure To Do So Was Not In Accordance With Law.......... 9

    C.    Commerce Decided Based On Rhetorical Characterization. That Is Not  Substantial Evidence. Nor In Accordance With Law ..................... 11

    D.    The Contested Decision's "Contact Us" Claim Is Unsupported By Substantial Evidence And Otherwise Not In Accordance With Law ...... 13

    E.    The Contested Decision Rests On <u>Dongtai Peak.</u> <u>Dongtai Peak</u> Confirms That The Contested Decision Is Not In Accordance With Law. ................................................................................. 15

    F.    The Contested Decision Rests  On <u>Bebitz.</u> <u>Bebitz</u> Confirms That The Contested Decision Is Not In Accordance With Law ...................... 17

    G.    The Contested Decision Violates Settled Court Precedent ..................... 19

    H.    Commerce Decision Violates Commerce Precedent  ............................ 22

II.    COMMERCE'S REFUSAL TO CONSIDER PETITIONER INTERFERENCE IN THE INVESTIGATION WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE NOT IN ACCORDANCE WITH LAW ........................................................... 26

    A.    Petitioner's Conflict Claim Lacked Merit, Even Colorable Merit.......... 27

    B.    Petitioners' Conflict Claims Interfered In The Investigation, As Substantial Evidence Demonstrates. There Is No Substantial Evidence Otherwise. Commerce's Failure To Then Consider It Is Not In Accordance With Law.. ................................................ 30

-i-

# TABLE OF CONTENTS

(continued)

Page

III.  COMMERCE'S ADVERSE INFERENCES ARE UNSUPPORTED BY
      SUBSTANTIAL EVIDENCE AND OTHERWISE NOT IN
      ACCORDANCE WITH LAW .......................................................................... 33

      A.    TKT Acted To The Best Of Its Ability. There Is No Evidence,
            Much Less Substantial Evidence, Otherwise. Commerce'sf
            Adverse Inferences As To TKT Actions Was Thus Not In
            Accordance With Law. .......................................................................... 33

      B.    Commerce Use Of Adverse Inferences As To The Kazakh
            Government Is Unsupported By Substantial Evidence And
            Otherwise Not In Accordance With Law .................................................. 34

IV.   REQUESTED RELIEF .......................................................................................... 34

V.    REQUEST FOR EXPEDITED ACTION ............................................................ 35

VI.   CONCLUSION ...................................................................................................... 36

**TABLE OF AUTHORITIES**

**Page(s)**

**AGENCY (COMMERCE) REGULATIONS**

19 CFR § 351.302 ................................................................................................5, 6

19 CFR § 351.303 ...................................................................................................5

*Extension Of Time Limits, Final Rule*,
    78 FR 57790 (Dep't of Commerce Sept. 20, 2013) (*Final Rule*) ...........................5

*Modification of Regulation Regarding the Extension of Time Limits*,
    78 FR 3367 (Dept't of Commerce Jan. 16, 2013)...................................................7

**COURT CASES**

Artisan Manufacturing Corp. v. United States,
    978 F. Supp. 2d 1334 (CIT 2014) ..................................................................18, 19

Asociacion Colombiana de Exportadores v. United States,
    6 F. Supp. 2d 865 (CIT 1998) ...............................................................................2

Auto Telecom Co., Ltd. v. United States,
    765 F. Supp. 1094 (CIT 1991) .............................................................................32

Bebitz Flanges Works Private Limited v. United States.
    433 F. Supp. 3d 1309 (CIT March 3, 2020)............................................... *passim*

BMW v. United States,
    Slip Op. at 18, Case No. 2018-1109 (Fed. Cir. June 14, 2019) .........................23, 24

Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,
    419 US 281 (1974)..................................................................................................3

Burlington Truck Lines v. United States,
    371 U.S. 156 (1962)...............................................................................................3

Christensen v. Harris Cty.,
    529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).........................................7

Clearon Corp. v. United States,
    Slip Op. 20- 141 (CIT)..........................................................................................30

Consol. Edison Co. of N.Y. v. NLRB,
    305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)..................................................3

-iii-

CP Kelco v. United States,
949 F.3d 1348 (Fed. Cir. 2020) ...................................................................................3

Dongtai Peak Honey Indus. v. United States,
777 F.3d 1343 (Fed. Cir. 2015) .................................................................6, 13, 14, 22

Dupont Teijin Films v. United States,
Slip Op. 13-111 (CIT Aug. 21, 2013) ...................................................................7, 17

F. Lli De Cecco Di Filippo Fara San Martino S.p.A. v. United States,
21 CIT 1124, 980 F. Supp. 485 (1997) .....................................................................30

Fine Furniture (Shanghai) Ltd. v. United States,
865 F. Supp. 2d 1254 (CIT 2012) .......................................................................17, 30

Fischer S.A. v. United States,
34 CIT 334 (2010) .....................................................................................................17

GEO Specialty Chemicals, Inc. v. United States, 951 F. Supp. 2d 32 (D.D.C.
2013) ....................................................................................................................24, 25

Glycine & More, Inc. v. United States,
880 F.3d 1335 (Fed. Cir. Jan. 23, 2018) .....................................................................7

Goodluck India Ltd. v. United States,
393 F. Supp. 3d 1352 (CIT 2019) .......................................................................22, 30

Grobest & I-Mei Indus. (Vietnam) Co. v. United States,
815 F. Supp. 2d 1342 (CIT Jan. 18, 2012) ....................................................17, 18, 19

Hebei Jiheng Chems. Co. v. United States,
161 F. Supp. 3d 1322 (CIT Feb.18, 2016) ................................................................30

Hontex Enterprises, Inc. v. United States,
Slip Op. 03-17 (CIT Feb. 13, 2003) ............................................................................7

Lucent Techs., Inc. v. Gateway, Inc.,
580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................3

Makita v. United States,
819 F. Supp. 1099 (CIT 1993) ............................................................................25, 26

Nippon Steel Corp. v. United States,
118 F. Supp. 2d (CIT 2000) ......................................................................................30

Nippon Steel Corp. v. United States,
373 F.3d 1373 (Fed. Cir. 2003) .................................................................................29

Nippon Steel v. United States,
  Slip Op 01-52 (CIT April 20, 2001) ...................................................30

Novosteel SA v. United States,
  284 F.3d 1261 (Fed. Cir. 2002).......................................................3

NTN Bearing Corp. v. United States,
  74 F.3d 1204 (Fed. Cir. 1995).............................................3, 7, 19

Pro-Team Coil Nail Enter., Inc. v. United States,
  No. 18-00027, 2019 WL 7167536 (CIT Dec. 19, 2019)........................17

Qingdao SeaLine Trading Co., Ltd. v. United States,
  766 F.3d 1378 (Fed. Cir. 2014)......................................................22

Siderca, S.A.I.C. v. United States,
  350 F. Supp. 2d 1223 (CIT 2004) .....................................................3

SKF USA, Inc. v. United States,
  263 F.3d 1369 (Fed. Cir. 2001).......................................................22

Sterling Fed. Sys., Inc. v. Goldin,
  16 F.3d 1177 (Fed. Cir. 1994).................................................3, 10

Timken U.S. Corp. v. United States,
  434 F.3d 1345 (Fed. Cir. 2006).......................................................19

AGENCY (COMMERCE) CASES

Amorphous Silica Fabric from China (A-570-038), 82 Fed. Reg. 8399 (Dept't of
  Commerce Jan. 25, 2017) ............................................................21

Ball Bearings and Parts Thereof from Japan and United Kingdom; 2010-2011, 80
  Fed. Reg. 4,248 (Dep't of Commerce Jan. 27, 2015) ...........................24

Issues and Decision Memorandum for the Final Determination of the
  Countervailing Duty Investigation of Silicon Metal from the Republic of
  Kazakhstan (Dep't of Commerce Feb. 22, 2021), available at
  https://enforcement.trade.gov/frn/summary/kazakhstan/2021-04032-1.pdf (last
  visited on July 21, 2021) ........................................................... passim

Ripe Olives from Spain (C-469-818), April 30, 2020, bar code 3970287....................................20

Silicon Metal from the Republic of Kazakhstan,
  86 Fed. Reg. 11,725 (Dep't. of Commerce Feb. 26, 2021) ........................... passim

Silicon Metal from the Republic of Kazakhstan,
  86 Fed. Reg. 20,365 (Dept't of Commerce April 19, 2021)...................................32

<u>Small Business Telephones from Taiwan</u>, 43 Fed. Reg. 42543, 42550 (Dep't of
Commerce Oct. 17, 1989) ........................................................................................32

*Stainless Steel Wire Rod from Taiwan*, 63 Fed. Reg. 40461, 40464 (Dep't of
Commerce July 29, 1998) ........................................................................................23

OTHER AUTHORITIES

Commerce at https://access.trade.gov/login.aspx ........................................................................12

## RULE 56.2(C)(1) STATEMENT

Plaintiffs Tau-Ken Temir LLP (TKT) and JSC NMC Tau-Ken Samruk (TKS)[1] contest

the U.S. Department of Commerce (Commerce) Final Decision in the Countervailing Duty

(CVD) Investigation Silicon Metal from the Republic of Kazakhstan, Inv. C-834-811, 86 Fed.

Reg. 11,725 (Dep't of Commerce Feb. 26, 2021) ("Final Results") and its accompanying Issues

and Decision Memorandum for the Final Determination of the Countervailing Duty (CVD)

Investigation of Silicon Metal from the Republic of Kazakhstan (Dep't of Commerce Feb. 22,

2021), available at https://enforcement.trade.gov/frn/summary/kazakhstan/2021-04032-1.pdf

(last visited July 21, 2021), Bar Code 4091341, PD 354 ("Decision Memorandum").[2]

TKT is the one and only Kazakh silicon metal producer and exporter to the United States.

TKT was subject to the Commerce CVD investigation whether the Government of Kazakhstan

(GOK) provided subsidies to such exports.  TKT participated in the investigation, answering

Commerce questionnaires. Plaintiff-Intervenor, the Ministry of Trade and Integration of the

Republic of Kazakhstan ("the Ministry"), also participated in the Commerce investigation,

answering Commerce questionnaires as to any GOK subsidies. The Ministry fully supports and

incorporates TKT's 56.2 brief and argument, just as the Ministry did in the proceedings below,

and thus does not need to submit its own Rule 56.2 brief.[3] Defendant-Intervenors, U.S. silicon

---

[1] By TKT, we mean a collective TKT – i.e., TKT and all cross-owned entities (listed below), including TKS. Commerce sometimes refers to TKT as TKT/TKS or TKS. Each time, Commerce meant TKT as we collectively do here.

[2] PD 354 means document number 354 of the index to the public administrative record before Commerce, that on June 1, 2021, the United States filed with this Court, ECF 22.  ECF 22 means document 22 in this Court's docket of this matter.

[3]  See Ministry Rebuttal Brief, Jan. 11, 2021, Bar Code 4073904, PD 340. Counsel can say this as counsel is also counsel to the Ministry.

metal producers Mississippi Silicon LLC and Globe Specialty Metals, Inc. (Petitioners), filed the CVD petition that led to the Commerce investigation below.

2. Issues of law presented, plus reasons to contest:

a. TKT followed exactly (100%) Commerce regulations and instructions in its questionnaire to TKT to request an extension in its questionnaire response. In contrast, Commerce failed to follow its own regulations and instructions in its questionnaire to TKT in decide the request, acting not in accordance with law. Further, in this regard, Commerce failed to consider facts that, as a matter of law, it should have been considered when deciding whether to accept TKT's questionnaire response, thus rendering a decision not supported by substantial evidence considering the record as a whole.

b. Commerce violated court precedent when deciding TKT's extension request, rendering its decision an abuse of discretion and not in accordance with law.

c. Commerce violated its own precedent and practice when deciding TKT's extension request and rejecting TKT's filed questionnaire response, rendering its decision arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

d. Commerce imposed adverse inferences against TKT and the Ministry where there was no evidence, much less the statutorily required substantial evidence, that TKT and the Ministry did not act to the best of their ability, the statutory condition before adverse inferences may be imposed.

e. Commerce impermissibly imposed adverse inferences on TKT for the actions of the Ministry, violating this Court's precedent under the circumstances at issue, a decision not in accordance with law.

f. Commerce violated its own precedent where a petitioner requests a Commerce investigation and then interferes in that investigation. That precedent is not to impose adverse inference on the respondent for the consequences of such petitioner interference. Commerce's decision in that regard is not supported by substantial evidence and otherwise not in accordance with law.

## STANDARD OF REVIEW

Per statute 19 U.S.C. § 1516a(b)(1)(B)(i), Commerce CVD decisions must be based on substantial record evidence, considering the record as a whole, and otherwise be in accordance with law.[4] Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion," considering the whole record.[5] Speculation is not substantial evidence.[6] There must be "a rational connection between the facts found and the choices made" by Commerce.[7] Commerce's decision path must "reasonably be discerned, … the required explanation must reasonably tie the determination under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding."[8] A "determination may be unwarranted by the facts to the extent that the agency may … not have considered facts which, as a matter of law, should have been properly considered."[9] Commerce's exercise of its discretion must be reasonable in light of its

---

[4]   Asociacion Colombiana de Exportadores v. United States, 6 F. Supp. 2d 865, 880 (CIT 1998)). Note that the same statute and thus court review standards apply to CVD and antidumping (AD).

[5]   Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

[6]   Novosteel SA v. United States, 284 F.3d 1261, 1276 (Fed. Cir. 2002); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1327 (Fed. Cir. 2009).

[7]   Siderca, S.A.I.C. v. United States, 350 F. Supp. 2d 1223, 1236 (CIT 2004) (citing Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

[8]   CP Kelco v. United States, 949 F.3d 1348, 1356 (Fed. Cir. 2020); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 US 281, 286 (1974).

[9]   Rule 56(c)(1) of this Court.

-3-

statutory obligation to calculate accurately subsidy margins – *i.e.*, Commerce abuses its discretion when its decision is "clearly unreasonable, arbitrary, or fanciful" (i.e., based on fantasy).[10]

## **ARGUMENT**

**I.    COMMERCE'S    FAILURE    TO    CONSIDER    TKT'S    QUESTIONNAIRE RESPONSE    IS    UNSUPPORTED    BY    SUBSTANTIAL    EVIDENCE    AND OTHERWISE NOT IN ACCORDANCE WITH LAW**

### **A.    Commerce Violated Its Regulations By Failing To Consider TKT'S Questionnaire Response**

TKT timely filed its responses to Commerce's first two questionnaires as to identifying cross-owned companies and affiliates, indeed without requesting any extension – *i.e.*, filed by Commerce's originally set deadline.[11] Respondents typically request extensions as to this initial threshold step in Commerce's overall questionnaire process. TKT did not.  That TKT effort put the investigation ahead of schedule.[12] That was the intent.

These initial Commerce questionnaires as to cross-owned companies and affiliates are thresholds for Commerce's final, third initial questionnaire here as to any government subsidies provided to a respondent -- *i.e.*, these two initial questionnaires determine who should answer that final, third questionnaire as to subsidies provided.  From these two initial questionnaire responses, Commerce picked TKT itself and five cross-owned TKT affiliates[13] to answer the subsidy

---

[10]  Sterling Fed. Sys., Inc. v. Goldin, 16 F.3d 1177, 1182 (Fed. Cir. 1994); Bebitz Flanges Works Private Limited v. United States. 433 F. Supp. 3d 1309, 1316 (CIT March 3, 2020) ("Bebitz AD" as it involved Commerce's AD investigation); NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995).

[11]  TKT Case Brief Comments On The Preliminary Determination, Jan. 4, 2021, at page 8, Bar Code 4071221-01  & 02, PD 337-338.

[12]  For record cites to this paragraph, see TKT questionnaire responses dated August 6, August 18 and September  8, 2020, PD 32, 35 & 46, Bar Codes 4012611-01, 4017285-01 and 4023436-01.

[13]  Silicon Metal LLP, Metallurgical Combine KazSilicon LLP, National Welfare Fund ''Samruk-Kazyna'' JSC, ''Ekibastuz GRES–2 station'' JSC, and JSC KEGOC. Commerce Preliminary

questionnaire (whom we refer to collectively as TKT), beyond of course the Government of Kazakhstan (i.e., the Ministry).

Before the deadline to answer the third questionnaire, TKT counsel requested a two-week extension to answer, noting the huge burden of a massive questionnaire response, the individuals involved were new to the CVD process and all had to respect COVID travel restrictions making questionnaire response preparation difficult. This is quite normal here. Commerce only granted a one-week extension.   Then, before that initially granted one-week extended date, TKT counsel again requested a second extension to September 17, 2020.  Commerce only partially granted it, to September 15, 2020. Each time, as soon as the need for an extension was apparent, TKT counsel requested it. Commerce observed that this diligence was TKT counsel's practice, as an experienced counsel.[14]

Technical file issues as to the final received TKT files were not resolved by the 5:00PM deadline to file the questionnaire response – *e.g.*, assimilation of the response, file corruption, Russian making searchable PDFs difficult to deal with, etc.[15] As soon as it became apparent in the preparation of the questionnaire response for filing that the 5:00PM deadline could not be met and that an extension was needed, TKT counsel immediately filed (at 3:50PM of the due date) on

---

Determination, Silicon Metal from Kazakhstan, 85 Fed. Reg. 78,121, 78,122 (Dep't of Commerce Dec 3, 2020), Bar Code 4062128-01, PD 326.

[14] For record cites to the above, *see* Commerce Nov. 19, 2020 Letter, Bar Code 4055736-01, PD 319; TKT Case Brief Comments On The Preliminary Determination, Jan. 4, 2021, at page 11, Bar Code 4071221, PD 337-338; TKT Extension Request, Aug. 25, 2020, Bar Code 4019325, PD 39; Commerce Response to Extension Request, Aug. 27, 2020, Bar Code 4020151-01, PD 41;  TKT Extension Request, Sept. 9, 2020, Bar Code 4023768, PD 47; Commerce Partial Granting Of Extension Request, Sept. 9, 2021, Bar Code 4024197, PD 49.

[15] TKT Case Brief Comments On Preliminary Determination, Jan. 4, 2021 at pages 9 & 12, Bar Code 4071221, PD 337-338; Commerce's Letter and Memorandum, Rejection Of Submission, Oct. 1, 2020, Bar Code 4035242, PD 238; TKT Extension Request, Sept. 15, Bar Code 4027065-01, PD 220; TKT Extension Request, Sept. 17, 2020, Bar Code 4027935-01, PD 224.

Commerce ACCESS for internet filings a stand-alone written one-day extension request. In doing this way, the many involved Commerce officials thereby all "quickly" (Commerce's word in its own regulations)[16] simultaneously learned of the extension request before the 5:00PM deadline. That is the reason Commerce states in its regulations to request an extension in this ACCESS way. The filed extension request was for technical difficulties as to preparing the questionnaire response for filing.

Commerce regulation 19 CFR § 351.302 (c) states that "before the applicable time limit" to answer a Commerce request "expires, a party may request an extension" via filing a written request on Commerce's internet site ACCESS for filing documents.  "The request must be in writing, in a separate, stand-alone submission, filed consistent with § 351.303 {*e.g.*, on ACCESS}, and state the reasons for the request." In its <u>Final Rule</u>, 78 Fed. Reg. at 57791-92, Commerce explains that its regulation 19 CFR § 351.302:

> considers that an extension request is untimely if it is filed after the applicable time limit expires. Therefore, we have determined that the term untimely in the final rule is defined as an extension request that is received after the applicable time limit expires.

Similarly, the Commerce Initial Questionnaire to TKT states that any extension request must "be communicated in writing to Commerce; otherwise the original deadline will apply."[17] As stated in <u>Dongtai Peak Honey Indus. v. United States</u>, 777 F.3d 1343, 1351 (Fed. Cir. 2015), cited by Commerce (<u>Decision Memorandum</u> at cmt. 1, p. 6) as on point:

> Under 19 C.F.R. § 351.302(b) (2012), Commerce "may, for good cause, extend any time limit established by this part." A party may request an extension "*before*

---

[16]  <u>Extension Of Time Limits, Final Rule,</u> 78 Fed. Reg. 57,790, 57793 (Dep't of Commerce Sept. 20, 2013) ("<u>Final Rule</u>").

[17]  Commerce Initial Questionnaire, Cover Letter at 3, July 23, 2020, Bar Code 4005169-01, PD 27.

*the applicable time limit ... expires,*" and such a "request must be in writing, ... and state the reasons for the request." *Id.* § 351.302(c). (emphasis in original)

TKT did all the above in making a timely one-day final, third extension request. As soon as knew that more time was needed, and how much – *i.e.*, at about 3:50 p.m. of the September 15, 2020 due date -- TKT counsel filed a written extension request on Commerce ACCESS for a one day extension, citing technical issues with final preparation of the questionnaire response.  There is no evidence, much less substantial evidence, otherwise.

Counsel was able to file the TKT several thousand page questionnaire response by 10:11am the next morning, one hour and forty-one minutes after Commerce's 8:30 am opening for business the next business day after the deadline, and before 5:00PM that day requested in the one-day extension request.

Commerce did not decide TKT's one-day extension request by the deadline for TKT's questionnaire response. For that reason – i.e., that Commerce did not decide the extension request by the 5:00PM deadline -- Commerce said (two weeks later) that TKT's questionnaire response was due at 8:30am the next day and so rejected it because TKT filed it at 10:41 am that day.[18] Commerce said that if it did not decide an extension request by the deadline, the questionnaire is

---

[18]  See Commerce's Letter and Memorandum, Rejection Of Submission, Oct. 1, 2020. Bar Code 4035242, PD 238 ("Commerce was unable to respond to this {TKT} request. Therefore, in accordance with the Extension of Time Limits notice, where Commerce is unable to notify the party requesting an extension of the disposition of that request by 5:00 p.m., the submission would be due by the opening of business, i.e., 8:30 a.m., on the next work day."); Decision Memorandum at Comment 1, page 15.

Commerce also initially claimed that TKT's questionnaire response was incomplete and thus was rejecting it on that basis. Commerce's Letter and Memorandum, Rejection Of Submission, Oct. 1, 2020 at page 1. Bar Code 4035242, PD 238. Id. at 1.  In reply, TKT noted to Commerce why this claim was unsupported by substantial evidence and otherwise not in accordance with law. See TKT Comment on Preliminary Determination, Jan 4, 2021at pages 20-25, Bar Code 4071221-01 and 4071221-02, PD 337-338. Commerce did not respond to the points in TKT's reply and said it never said it was a basis for rejection of the questionnaire response. See Decision Memorandum, Comment 1 at pages 20-21.

at least not due until the next day at 8:30am (for convenience, we call this "Next Day 8:30AM"). No where does Commerce cite authority that that means that the timely extension request will still not be decided and there will be no extension past 8:30AM the next day, what Commerce's rejection letter said and did.  In fact, all legal authority is to the contrary, as discussed herein.

Commerce's failure to decide TKT's timely extension request and then rejection of TKT's filed questionnaire response violates Commerce's <u>Final Rule</u> (78 Fed. Reg. at 57795). That rule states that, notwithstanding "Next Day 8:30AM", giving the respondent at least till 8:30am next day, if Commerce fails to answer an extension request by the deadline, Commerce still "will continue to grant extensions of time limits to the extent that they are warranted and deadlines for the segment permit." In other words, Commerce can and does (*see* below) decide extension requests after the deadline.

In this vein, the <u>Final Rule</u> (78 Fed. Reg. at 57795-96) states that Commerce will not adopt rules that are "inflexible to permit" Commerce "to effectively and fairly administer the AD and CVD laws" [19] – *i.e.*, Commerce will not adopt rules that unnecessarily hamstring/prevent Commerce to achieve its statutory mandate to calculate accurately subsidy (or dumping) margins.[20] But that is what Commerce's letter impermissibly did, stating that since Commerce didn't decide TKT's extension request by 5:00PM, then it is inflexibly boxed in by its own rules and cannot decide.

Here, as indicated above, where as here the actual wording of the regulation itself (not other discussion)

is clear, no deference is warranted. Deferring to Commerce's position "would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a

---

[19]  <u>Modification of Regulation Regarding the Extension of Time Limits</u>, 78 Fed. Reg. 3367, 3370 (Dep't of Commerce Jan. 16, 2013).

[20]  <u>NTN Bearing Corp. v. United States</u>, 74 F. 3d 1204, 1207 (Fed. Cir. 1995).

new regulation." <u>Christensen v. Harris Cty.</u>, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (unambiguous regulation could not be rewritten by agency under guise of interpreting regulation and judiciary owed no deference to agency interpretation).[21]

When TKT noted the above legal errors in Commerce's rejection of TKT's questionnaire response – i.e., that Commerce failed to follow its actual regulation and practice -- Commerce renounced what it said in its rejection letter. But then, over the ensuing many months, Commerce made new, equally erroneous claims to seek to justify its failure to consider TKT's extension request and questionnaire response. Commerce made no effort to meet its statutory mandate to calculate accurately the subsidy margin. Respectfully, it would appear that Commerce unreasonably rejected the questionnaire response, and then, not wanting to admit and correct error, offered new equally unreasonable claims to reject the questionnaire response.

**B.      In This Investigation, Commerce Admits That It Had Time To Consider TKT's Questionnaire Response Without Any Burden.  Commerce's Failure To Do So Was Not In Accordance With Law.**

Commerce never says that granting TKT's one-day extension request – again, the questionnaire response was filed one hour and forty-one minutes after Commerce's opening the next business day -- would have hindered its investigation of TKT as to meeting its statutory mandate to calculate accurately the subsidy margin – i.e., sufficient time remained to complete the investigation. Indeed, Commerce's preliminary decision statutory deadline was not for 73 days (final decision, 158 days).

---

[21]  <u>Glycine & More, Inc. v. United States</u>, 880 F.3d 1335, 1345 (Fed. Cir. Jan. 23, 2018). *See also* <u>Hontex Enterprises, Inc. v. United States</u>, Slip Op. 03-17 at 41 (CIT Feb. 13, 2003) (Commerce's "incompatible departure from the clear meaning of the regulation" is not in accordance with law.)

Rather, Commerce effectively admits that Commerce had time to consider TKT's questionnaire response in this investigation even if Commerce granted TKT's one-day extension request. That is, the <u>Decision Memorandum</u>  (at cmt. 1) states:

> Commerce establishes deadlines so that it can conduct this (and its numerous other trade remedy proceedings) in an efficient manner within its statutory and regulatory deadlines. Therefore, it is critical that parties file documents by the established deadline, or timely request an extension of such a deadline such that Commerce can provide a considered response. Timely filings and timely extension requests contribute to Commerce's efficient administration of the numerous cases before it and the AD/CVD laws. Conversely, untimely filings and last-minute extension requests hinder the efficient conduct of our proceedings, and require that Commerce devote additional time and resources to addressing such untimely filings and last-minute requests. Additionally, although the burden associated with a single late-filed questionnaire response may be perceived as minimal, that burden is not minimal when aggregated across all proceedings. Accordingly, for the efficient conduct of its proceedings, it is critical that parties adhere to the deadlines established by Commerce.

Commerce failed to make this claim until the end of this investigation. It has multiple legal errors.

1. TKT did adhere to Commerce's deadlines to timely request an extension. *See* above.

2. Commerce does not say the above in other cases where have been untimely or last minute extension requests and yet Commerce still accepts the extension request and questionnaire. *See* below. This claimed reason is also contrary to the below discussed court decisions. This claimed reason appears to be reason just specific to TKT and in this one case only, and even though Commerce had time to accept and consider the questionnaire response, as Commerce acknowledges here. That indicates arbitrary and capricious conduct, an abuse of discretion, not in accordance with law.

3. Point #2 above also confirms that Commerce's above burden claims are not supported by substantial evidence. Further, Commerce can and does decide extension requests after the deadline, at its leisure as to when. So there is no rush, as feigned by Commerce. In fact, here,

Commerce "decided" TKT's one-day extension request two weeks after it was filed. Or was it months later, given Commerce's every changing stories. *See* below.

4. Finally, Commerce does accept late questionnaire responses even when no timely extension request was made. *See* below. Commerce is then not burdened with meeting a deadline as it has passed and Commerce still decides. Is Commerce saying here that it is more likely to accept a late questionnaire response (like in those other cases, *see* below), than a timely one like in this case? The point of this rhetorical question is to demonstrate the unreasonableness of Commerce's position – *i.e.*, that it is not in accordance with law.

### C.    Commerce Decided Based On Rhetorical Characterization. That Is Not Substantial Evidence. Nor In Accordance With Law

1. The <u>Decision Memorandum</u> seems to say that TKT should have submitted an earlier extension request and for the first time (at the very end of the investigation) characterized the record to say that TKT counsel "gambled unwisely" as to its extension request. There is no evidence, much less substantial evidence, for Commerce's claim, which also is not in accordance with law.

As an initial matter, the <u>Decision Memorandum</u> cites this Court in <u>Bebitz (AD)</u>. But <u>Bebitz (AD)</u> states (at 1316 & 1322) that should not characterize the record, nor look at respondent intent, when deciding adverse inferences.   Yet that is precisely what Commerce then does here. Commerce's decision is also pure fantasy, warranting reversal per <u>Sterling Fed. Sys.</u>, above. There is no evidence, much less substantial evidence, that counsel decided to gamble.

As discussed above, TKT counsel received TKT's prior two questionnaire responses and filed them timely, without extension request. For the third questionnaire response, counsel requested extensions several days in advance, each time it became apparent that an extension was needed, and then just the last one at 3:50PM when it became apparent that another day was needed

-11-

because of file corruption issues, etc. Even Commerce repeatedly states that the undersigned counsel is "experienced counsel" and appropriately files extension requests as soon as knows extension needed.

Here too, counsel did exactly as Commerce instructed counsel to do – when see need extension, request it. There is no evidence, much less substantial evidence, otherwise. There is no evidence in particular that counsel decided to gamble. By this point, TKT counsel was aware of what TKT could do as to questionnaire response preparation, from the prior filings and continuous contact with TKT, such that felt that when counsel gets the final version of TKT's questionnaire response for filing all was in good shape to timely file. In short, Commerce makes many unstated and unsupported assumptions in its decision based on an assumption that TKT counsel was a "gambling man", rending Commerce's decision unsupported by substantial evidence and not in accordance with law.

But suppose one entertained Commerce's gambling fantasy. If one goes down that rabbit hole, it quickly become apparent that Commerce's fantasy impermissibly fails to consider the record as a whole and Commerce's own practice and regulations, thus still renders it unsupported by substantial evidence and not in accordance with law. The gambling claim would have to consider that Commerce might have rejected an earlier filed extension request, as Commerce hints and Commerce has done elsewhere at this stage – *i.e.,* when two week extension already granted, as here. Then it would have been better for experienced counsel to file an extension at the last minute to hope to get at least to 8:30am next morning, to gain more time, as the only hope. That is not a gamble. It is a considered, well-founded judgment call.[22] Commerce fails to consider the

---

[22] In this regard, see below discussion on petitioner interference in the investigation, which is pertinent here.  Commerce failed to consider it in these regards, again indicating that Commerce failed to make a decision based on substantial evidence considering the record as a whole.

implications of its "Next Day 8:30 AM" discussion in this regard. Commerce also has not used this gambling fantasy in other cases – i.e., Commerce has not found others who filed an extension request too close to deadline to be engaged in impermissible gambling. Commerce is being inconsistent, and thus arbitrary and capricious, an abuse of discretion.

To repeat though, TKT counsel filed the one-day extension request as soon as it was known to be needed, as Commerce instructs, and as even Commerce recognized TKT counsel was doing before. The point of the immediately preceding paragraph was to demonstrate that Commerce gambling fantasy was just that – i.e., a fantasy.

2. Commerce also based its decision to reject the questionnaire response on the fact that TKT counsel is "experienced counsel."  That is one of those backhanded "complements" that one does not know how to interpret. More to the point, such rhetoric is no substitute for a decision supported by substantial evidence based on the record as a whole and in accordance with law, as we discuss throughout this brief. We could just as easily say that Commerce and petitioners are "experienced" and know how to directly address the pertinent record evidence and law and yet on this matter repeatedly avoid doing so. Where does that get one on the evidence and law issues? No where.

D. **Commerce's "Contact Us" Claim Is Unsupported By Substantial Evidence And Otherwise Not In Accordance With Law**

The <u>Decision Memorandum</u> (at cmt. 1, page 6) says that TKT's counsel did not attempt to contact either Commerce or the Commerce ACCESS Help Desk before the close of business of the deadline date – *i.e.,* when Commerce employees were claimed to be available to assist in the resolution of any technical problems  as to filing the questionnaire response or to discuss the need for an extension request. In fact, TKT's counsel did contact Commerce for an extension via the way Commerce explicitly states in its regulation and the questionnaire received by TKT said

-13-

should be done. *See* above. The extension was needed as to <u>preparation</u> of the questionnaire response (e.g., file corruption issues). There is no, much less substantial evidence, otherwise. That is not what Commerce and Commerce's ACCESS Help Desk do or assist with. Commerce does not say otherwise.

The technical <u>ACCESS filing</u> issue was not apparent – and would not be apparent -- until after questionnaire response preparation for which the extension request was made was resolved, which occurred when Commerce and its ACCESS Help Desk were closed. <u>Decision Memorandum</u>  at Comment 1, pages 15-16. *See also* Commerce at https://access.trade.gov/login.aspx, the ACCESS phone number. That call, after hours, *i.e.*, just yields the voice message "not open until 8:30am." But that is when Commerce claimed that the submission was due (i.e., Next Day, 8:30 AM). So is of no help. Counsel necessarily had to revert to other means to addressing those issues in the questionnaire response filing and did so immediately, rather than wait to 8:30 AM.[23]

Commerce actually does not say otherwise than the above, when closely reading exactly what Commerce actually said. In short, Commerce's conflates two separate issues: 1) a respondent finalizing a questionnaire response and 2) a respondent filing the response on Commerce's web ACCESS. When the two separate issues are parsed, as done above, it is clear that there is no evidence, much less substantial evidence, for Commerce's "contact us" claim.

Finally, Commerce does not use this "Contact Us" claim in other cases where it would arguably apply. *See* Commerce and court cases discussed elsewhere herein. Such inconsistent application is an abuse of discretion and not in accordance with law.

---

[23] TKT Comments On Preliminary Determination, Jan. 4, 2021 at page 10, Bar Code 4071221-01, PD 337-338.

**E.    The Contested Decision Rests On <u>Dongtai Peak</u>. <u>Dongtai Peak</u> confirms That The Contested Decision Is Not In Accordance With Law.**

The <u>Decision Memorandum</u> (at cmt. 1, page 6) is based on the Federal Circuit's <u>Dongtai Peak</u>. But <u>Dongtai Peak</u> demonstrates that the <u>Decision Memorandum</u> is not in accordance with law.

In <u>Dongtai Peak</u>, 777 F. 3d at 1347 & 1352, the respondent filed an extension request five minutes before the deadline. Commerce accepted the extension request, and indeed after the deadline, and accepted the questionnaire response based on the requested extended date. Commerce should similarly have accepted TKT's extension request, per <u>Dongtai Peak</u>. Yet the <u>Decision Memorandum</u> does the opposite.

In addition, in <u>Dongtai Peak</u> (at 1347), as to a deadline on another later questionnaire response, the same respondent filed another extension request two days <u>after</u> the deadline, and even then did not thereafter file its questionnaire response within the extended time that it had then requested, but rather later. The Federal Circuit (at 1351-52) emphasized that must file extension requests with Commerce <u>before</u> the deadline of the questionnaire response.

Here, TKT filed the extension request <u>before</u> the deadline and then filed the response before the requested extension. Again, per <u>Dongtai Peak</u>, if anything, Commerce should have considered and accepted TKT's questionnaire response. <u>Dongtai Peak</u> does not show otherwise, contrary to the <u>Decision Memorandum's</u> claims.

The Federal Circuit further noted (at 1351) in <u>Dongtai Peak</u> that the respondent requested the Commerce review and thus should have been prepared to answer the questionnaire earlier.  In contrast, here, TKT did not request the investigation. Rather, here it was Petitioners who requested the investigation. Again, if anything, <u>Dongtai Peak</u> supports acceptance of TKT's questionnaire response, the opposite of what the <u>Decision Memorandum</u> claims.

Moreover, in Dongtai Peak (at 1347 & 1352), Commerce said that Commerce could not grant the above second extension request because of particular issues as to that respondent as to whether sales were bona fide that required time to fully investigate, time which Commerce said was now lacking by the time that the respondent submitted its questionnaire response. Commerce made no such type determination as to TKT – *i.e.*, that Commerce had insufficient time to complete the investigation if it granted the extension. In fact, the opposite, as to TKT – *i.e.,* Commerce indicated that it had time to complete this investigation even if it granted TKT's one-day extension request. *See* above.

Finally, in Dongtai Peak (at 1353) the Federal Circuit held that the respondent's due process rights were not violated because Commerce had informed the respondent to submit the request before the deadline and in writing (in Commerce ACCESS), which the respondent had not done. In contrast, (a) TKT filed its extension request before the deadline and in writing (in ACCESS), doing exactly as Commerce instructed; and (b) Commerce had not informed TKT to do otherwise than exactly what TKT did. Per Dongtai Peak, TKT's due process rights were violated by Commerce rejecting TKT's extension request for doing exactly as Commerce told TKT to do.

In short, the situation in Dongtai Peak is not TKT's situation. With any support, the Decision Memorandum  erroneously claims that Dongtai Peak is "on point" -- *i.e.*, "the facts of this investigation are very similar to those in Dongtai Peak." It is the opposite. Further, multiple legal principles stated in Dongtai Peak confirm that the Decision Memorandum is not in accordance with law and TKT's extension request should have been considered and its questionnaire response accepted.

**F.**     **The Contested Decision Rests On <u>Bebitz</u>. <u>Bebitz</u> Confirms That The Contested Decision Is Not In Accordance With Law.**

The <u>Decision Memorandum</u> (at cmt. 1) states that "the facts in <u>Bebitz (CVD)"</u> Slip Op. 20-26 (CIT March 2, 2020) "parallel those in this investigation nearly exactly … Notably, Bebitz was represented by the same counsel" as TKT.

Actually, in <u>Bebitz CVD</u> (at page 15, fn. 10), this Court reprimanded Commerce and petitioner, saying that should not blame counsel for what were clearly its clients' Bebitz's own doing (*see* below for more), and *a fortiori* especially actions of other clients in other proceedings. Here, Commerce again impermissibly does so by innuendo, as the basis for its decision. Commerce talking smack as to counsel does not render its decision supported by substantial evidence and in accordance with law.

The <u>Decision Memorandum</u> rests on the unsupported claim that the facts in <u>Bebitz(CVD)</u> "parallel those in the" TKT "investigation nearly exactly." It is the opposite.  In Bebitz CVD, at 4-8, 12, 14-17 (fn. 14) & 19-20, this Court emphasized that, from the start of the CVD investigation,  respondent Bebitz was not forthcoming and was intentionally obtuse as to "key investigation issues" – e.g., failing to reveal cross-owned affiliates key to the CVD investigation in answering Commerce's subsidy questionnaire; (b) was given "multiple opportunities" to answer the subsidy questionnaire over two months and did not do so, where (c) Commerce found at the time of its rejecting of Bebitz's questionnaire response that only one month remained until Commerce's already extended preliminary CVD decision deadline, such that no more extension could be granted and still meet statutory deadlines in that particular case, and that sufficient time and opportunity was given Bebitz to respond.

None of those <u>Bebitz(CVD)</u> facts apply to TKT.  Nor does Commerce say otherwise, much less support with substantial evidence. As discussed above, 1) unlike <u>Bebitz (CVD)</u>, TKT was

fully responsive from the start as to cross-owned companies that should answer Commerce's subsidy questionnaire, indeed  responding faster to those questionnaires than many respondents; 2) unlike Bebitz (CVD), TKT was not given "multiple opportunities" to answer the subsidy questionnaire (indeed, not one); and 3) unlike Bebitz (CVD) two and a half months remained until Commerce's preliminary decision, not one month, where Commerce acknowledges that it had time to complete the investigation.

The Decision Memorandum also rests on Bebitz (AD) as on point. It is not. Rather, the opposite. In the AD investigation in Bebitz (AD), after sixteen extension requests by respondent Bebitz, with some of Bebitz's extension requests after the deadline, and eight Commerce supplemental questionnaires, Bebitz still had not answered half of the questions in Commerce's original AD questionnaire that Commerce had issued five months earlier, information that had been repeatedly requested, with multiple opportunities for Bebitz to provide the requested information, with serious Bebitz mischaracterizations of the actual facts in its questionnaire responses. Bebitz (AD) at 1316-26. During the entire period of Bebitz's extension requests and questionnaire responses, Commerce had been "in constant contact" with respondent Bebitz to assist as to issues and "warned continued failure" to answer questions repeatedly asked could result in adverse inferences. Id. Commerce held that due to the impending already extended AD preliminary deadline one month away, Commerce had no more time in that particular case to allow Bebitz more time to answer AD questionnaires.  Id.

In sum, the facts of Bebitz (AD) are also not the facts as to TKT.  *See* above. Without evidence, much less substantial evidence, the Decision Memorandum claims otherwise.

In Bebitz (AD) at 1309, this Court summed up that:

This case presents the potential tension in the administrative process between the statutory obligation of an agency to render its determinations within clear time

-18-

deadlines and the ability of parties to participate in a meaningful fashion in that process.

Counsel respects and can appreciate this tension. Under the specific facts of <u>Bebitz (AD)</u>, the Court held that Commerce "struck the proper balance between finality and accuracy." <u>Bebitz (AD)</u> at 1316. Commerce did not as to TKT, actually did not even try, much less support any explanation with substantial evidence. TKT did not undermine Commerce's ability to meet its statutory deadlines by its one-day extension request.  There is no evidence, much less substantial evidence otherwise.  TKT was denied the opportunity to meaningful participate and an accurate subsidy margin.

### G.      The Contested Decision Violates Long-Established Court Precedent

As noted above, TKT made a <u>timely</u> one-day extension request and filed its questionnaire response the early morning (10:41am) after the deadline date and before the requested next day extended date. Extensive court precedent as to when Commerce rejection of even an <u>untimely</u> extension request is an abuse of discretion, not in accordance with law, *a fortiori* applies here – i.e., that it was an abuse of discretion for Commerce to not accept TKT's submitted questionnaire response.

In this now long-line of court precedent, this Court and the Federal Circuit are "guided first by the remedial, and not punitive, purpose of" CVD/AD trade law and the CVD/AD statute's goal to determine CVD/AD margins "as accurately as possible."[24] The courts first weigh "the burden

---

[24]  <u>Grobest & I-Mei Indus. (Vietnam) Co. v. United States</u>, 815 F. Supp. 2d 1342, 1365 (CIT Jan. 18, 2012); <u>Fischer S.A. v. United States</u>, 34 CIT 334, 348-349 (2010); <u>Pro-Team Coil Nail Enter., Inc. v. United States</u>, No. 18-00027, 2019 WL 7167536, at 9–10 (CIT Dec. 19, 2019); U.S. Magnesium LLC v. United States, 895 F. Supp. 2d 1319, 1325 (CIT 2013) ("In determining whether Commerce's rejection of an untimely submission amounts to an abuse of discretion, this Court considers whether the interests of accuracy and fairness outweigh the burden placed on {Commerce} and the interest in finality."); Wuhu Fenglian Co., Ltd. v. <u>United States</u>, 836 F. Supp. 2d 1398, 1404-

imposed upon the agency by accepting the late submission,"[25] and "the need for finality at the final results stage." The courts review whether the interests of accuracy and fairness outweigh the burden placed on" Commerce" and "the interest in finality."[26] Counsel respects and can appreciate this balancing.  Here, Commerce did not do that balancing, thereby rendering a decision not in accordance with law. Indeed, Commerce admits that granting TKT's one day extension request and considering its questionnaire in particular would have not been be a burden as to this investigation, which would seem a given anyway since it was filed just 1 hour and forty-one minutes into the next business day where the preliminary decision was 73 days away (final decision 158 days).

     In <u>Artisan</u>,[27] this Court held that Commerce's rejection of a respondent's questionnaire response as untimely was an abuse of discretion and unsupported by substantial record evidence.[28] This Court found in <u>Artisan</u> that counsel's missing of a deadline and not timely requesting an extension was "inconsequential" and would not have had any "adverse consequences for the investigation" given it was only one-day delay and the time remaining in the investigation.[29] <u>Artisan</u> continued that rejection means a "consequence that {is} grossly disproportionate to the mistake that was made."[30] This Court found rejection an abuse of discretion, not in accordance with law.

---

05 (CIT 2012); Fine Furniture (Shanghai) Ltd. v. United States, 865 F. Supp. 2d 1254, 1267 (CIT 2012); <u>Dupont Teijin Films v. United States,</u> Slip Op. 13-111 at 5 (CIT Aug. 21, 2013).

[25] <u>Grobest</u> at 1365.

[26] <u>Id</u>.

[27] <u>Artisan Manufacturing Corp. v. United States</u>, 978 F. Supp. 2d 1334, 1345 (CIT 2014).

[28] <u>*Id.*</u> at 1348.

[29] <u>Id.</u> at 1345-1348.

[30] <u>Id</u>. at 1347.

*A fortiori*, Commerce's rejection of TKT's questionnaire response was not in accordance with law. Unlike Artisan, TKT timely requested an extension. As in Artisan, accepting TKT's timely extension request for one-day would have had no "adverse consequences" and would be "inconsequential" to Commerce's timely and efficient completion of the particular investigation. Commerce does not contend otherwise, much less with substantial evidence, and in fact effectively agrees. *See* above.

In contrast, the consequence to TKT of rejection is "grossly disproportionate"[31] – *i.e.*, the trade-stopping 160% CVD import cash deposit rate and a denial of an opportunity to demonstrate that it received no subsidies, so not subject to endless Commerce annual administrative reviews.  .

Commerce's exercise of discretion as to extension requests and timeliness of submissions (even late ones) must be reasonable in light of its statutory obligations to calculate accurately CVD/AD margins within the statutory time limits.[32] "A regulation which is not required by statute … must be waived where failure to do so would amount to an abuse of discretion"[33]  Failure to waive any regulation deadline here – actually there is none -- is an abuse of discretion. The deadline here was not necessary to satisfy statutory obligations.[34]

The Decision Memorandum (at cmt 1) states that TKT:

argues that several court cases support its contention that Commerce's discretion to reject untimely filed submissions is limited such that the interests of accurately calculating an AD/CVD margin must outweigh the need for timely submitted information, or such that a rejection of a submission would cause substantial hardship to a respondent. However, the CIT has held that the cases cited by TKT as precedent for reversing our decision, namely, Artisan, Grobest, and NTN Bearing are inapposite … more recent decisions by the CIT {*i.e.*, Bebitz (AD) at

---

[31] Id. at 1347.

[32] NTN Bearing Corp. v. United States, 74 F.3d 1204, 1207 (Fed. Cir. 1995).

[33] Id.

[34] Timken U.S. Corp. v. United States, 434 F.3d 1345, 1353-54 (Fed. Cir. 2006).

fn. 6} support Commerce's findings in this investigation regarding our decision to reject TKT's untimely-filed questionnaire response.

Commerce correctly states here what the pre-Bebitz court decisions said. Commerce says that Bebitz reversed all of them. Bebitz did not. Rather, this Court said that the Bebitz(AD) facts were "inapposite" to prior precedent (this Court's exact words in Bebitz(AD)) and thus did not overturn other precedent. Whether that prior court precedent (seven cited decisions there and in footnote 21 hereto) is inapposite to the facts of Bebitz does not mean that it is inapposite to the facts of TKT. TKT's situation is distinguishable from Bebitz (AD). *See* above.

Further, seven court decisions were cited by TKT to Commerce in the proceedings below (and now in this brief in footnote 21) include Federal Circuit decisions. The Decision Memorandum would have it that this Court can overturn decisions of its own reviewing court, the Federal Circuit, which is obviously incorrect as a matter of law. This Court in Bebitz(AD) did not overturn that long line of court precedent, including its own and Federal Circuit, as the Decision Memorandum wrongly states as its basis for decision as to TKT.

## H.    Commerce Violates Its Own Precedent

Commerce recently decided in another case that:

On the basis of {4:30PM email} notification of filing difficulty prior to the 5 PM deadline to complete the filing, the Department of Commerce is{six days after the deadline} accepting the supplemental response as timely filed.[35]

---

[35] Commerce granting of extension request, *Ripe Olives from Spain* (C-469-818), April 30, 2020, Bar Code 3970287.  Note that Commerce decisions or any trade materials and commentary on the law, such as here, are not factual information. Commerce, *Definition of Factual Information*, 78 Fed. Reg. 21,246, 21,251 (Dep't of Commerce April 10, 2013). Publicly available administrative decisions (*e.g.,* by Commerce in ACCESS intended for the public) may be cited in legal argument in Commerce case briefs as are not facts. *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308, 1323-25 (CIT 2018); Commerce Memorandum, *Certain Vertical Shaft Engines Between 225cc and 999cc, and Parts Thereof from China* (A-570-119), Dec. 31, 2020, Bar Code 4070614-01. The purpose of Commerce's public records is to aid public

This Commerce decision supports multiple pertinent legal principles cited herein by TKT – to wit., 1) Commerce can decide an extension request filed at 4:30PM of the deadline date; 2) Commerce can do so well after the deadline for the questionnaire response; 3) the deadline is not automatically 8:30AM next morning if Commerce doesn't decide by 5:00PM, etc. It is those bedrock legal principles here, supported by Commerce here, that make this Commerce holding significant and relevant to TKT. Any claimed differences as to this or other cases cited here are not relevant as to such legal principles. Any claimed difference does not make a difference if not relevant to general legal principles applied. That is especially the case where the claimed differences are not articulated and their significant not explained. All this is Law 101.

Commerce says that different cases are distinguishable because they are different cases. Commerce makes no attempt otherwise to distinguish them.  In one brush, Commerce entirely sweeps aside American jurisprudence.

As discussed above, TKT's one-day extension request was <u>timely</u>. That said, Commerce accepts even <u>untimely</u> extension requests.[36] Commerce grants untimely extension requests from counsel that cite misunderstanding of Commerce Access requirements,[37] refusal of counsel to timely file a questionnaire response because of counsel's misunderstanding of law,[38] printer

---

understanding of the administration of U.S. CVD/AD law. David Binder (former senior Commerce official), *Down in the Dumps: Administration of the Unfair Trade Laws*, at 334 (1991).

[36]  Commerce granting of extension request*,* <u>Amorphous Silica Fabric from China</u> (A-570-038), 82 Fed. Reg. 8399 (Dep't of Commerce, Jan. 25, 2017), referencing and adopting Commerce's Jan. 17, 2017 Issues and Decision Memorandum at 25.

[37]  Commerce Oct. 1, 2014 letter to Gov't of Oman granting Sept. 15, 2014 extension request in <u>Certain Steel Nails from Oman.</u>

[38]  Forgital Italy SpA Feb. 22, 2019 request for reconsideration and extension in *Finished Carbon Steel Flanges from Italy* and Commerce March 5, 2019 letter granting the extension and accepting the late-filed submission. In that case, the respondent's counsel had the questionnaire response

jams,[39] confused paralegals,[40] counsel calendaring errors,[41] requesting an extension for the wrong questionnaire,[42] etc. Notably, Commerce did not dismiss these extension requests saying that (1) counsel should not have gambled in this way (i.e., filed at last minute or even after the deadline), that (2) counsel was experienced (there are, as there Court too should be familiar with them), or that (3) Commerce had time to complete the investigation even if the extension was granted but has a policy against granting untimely extension requests given resources required to address them, etc. The Decision Memorandum did not deny this Commerce precedent cited to Commerce in the proceedings below.  A fortiori, to be consistent with its own precedent, Commerce should have granted TKT's timely one-day extension request that Commerce agrees did not hinder the completion of the investigation. Commerce's failure to do so, without reasonable explanation as to any differences as to above cases where extension granted, is arbitrary and capricious, an abuse of discretion, and not in accordance with law.[43]

The Decision Memorandum (at cmt 1) states that TKT cites to cases "where Commerce has accepted untimely submissions." The Decision Memorandum then responds that the Federal Circuit "has confirmed that Commerce is not bound by its actions in prior proceedings, as each proceeding 'is a separate act of Commerce's authority that allows for different conclusions based

---

ready to file on the due date, but then decided not to timely file based on European Union privacy laws that long preceded Commerce's issuance of its questionnaire.

[39]  Petitioner Nucor Aug. 25, 2017 extension request in Carbon and Certain Alloy Steel Wire Rod from Mexico and Commerce Aug. 25, 2017 letter to petitioner granting request.

[40]  Respondent Inmax Nov. 3, 2014 extension request in Certain Steel Nails from Malaysia and Commerce Nov. 5, 2014 memorandum.

[41]  Hyundai Steel Jan. 5, 2016 extension request in Cold-Rolled Steel Flat Products from Korea and Commerce Jan. 11, 2016 memorandum granting.

[42]  Roung Shu Feb. 18, 2015 extension request in Narrow Woven Ribbons with Woven Selvedge from Taiwan and Commerce's Feb. 27, 2015 letter granting.

[43]  SKF USA, Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001); Goodluck India Ltd. v. United States, 393 F. Supp. 3d 1352, 1358 (CIT 2019).

on different facts in the record.'"[44] The <u>Decision Memorandum</u> then fails to note that there the Federal Circuit went on to say that Commerce "explained the differences" between the records of the cases and "reasonably concluded" that there was a basis for different decisions, thus rendering it "not improper" to reach different decisions.

Here, as to TKT, the <u>Decision Memorandum</u> fails to do so – i.e., explain the differences between the records of the cases, much less reasonably, providing the basis for different decisions, to support accepting even untimely requested questionnaire responses under discussed circumstances less compelling than TKT's. Further, in this regard, if one was to accept Commerce's claim here, then the <u>Decision Memorandum</u> inconsistently cites to the <u>Bebitz</u> and <u>Dongtai Peak</u> decisions, even though they are other proceedings and even though there is no support for a claim that the circumstances were similar. The <u>Decision Memorandum</u>'s contradictory approach is not reasonable and thus an abuse of discretion.[45]

———————————

In short, Commerce's failure to consider and then accept TKT's questionnaire response was not supported by substantial evidence or otherwise in accordance with law. But there is another reason that independently supports this conclusion, to which we now turn.

---

[44]  <u>Qingdao SeaLine Trading Co., Ltd. v. United States</u>, 766 F.3d 1378, 1387 (Fed. Cir. 2014).

[45]  As the above Commerce and court decisions attest, so-called last-minute requests are an inevitable, inherent part of the process. A nature of the beast. Huge amounts of information are requested from foreign respondents on extremely short order where all of a sudden a respondent finds itself in the midst of a very rapid trade investigation following the filing of an AD/CVD petition so requesting.  Commerce itself has effectively so recognized, including the many extensions Commerce granted cited herein.

## II.     COMMERCE'S REFUSAL TO CONSIDER PETITIONER INTERFERENCE IN THE INVESTIGATION  WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE NOT IN ACCORDANCE WITH LAW

Where petitioner interferes in a Commerce questionnaire process investigation, Commerce precedent is to takes corrective action, including imposing no consequent adverse facts on a respondent.[46] Commerce's failure to do so here was not in accordance with law as to treating similar situations differently, unlawfully arbitrary and capricious, an abuse of discretion.  This is a pertinent separate, independent factor as to whether TKT's questionnaire response should have been accepted and whether TKT acted to the best of its ability, and whether Commerce failed to consider this information on these issues, rendering its contested decision not supported by substantial evidence considering the record as a whole. We discuss these points below.

The Federal Circuit vacates Commerce adverse margins when Commerce did not consider "how the procedural irregularities surrounding the" Commerce proceeding affected respondent's "level of culpability" to insure that the high CVD/AD margin imposed is "not unduly punitive."[47] Commerce must consider "mitigating circumstances" when selecting any adverse rate. As to a respondent's missed questionnaire response filing deadline, the Federal Circuit faulted Commerce for failing to address "unique factual circumstances" surrounding the respondent's failure to submit a questionnaire response in determining the appropriateness of the selected CVD/AD margin.[48]

---

[46]  Stainless Steel Wire Rod from Taiwan, 63 Fed. Reg. 40461, 40464 (Dep't of Commerce July 29, 1998).

[47]  BMW v. United States, Slip Op. at 18, Case No. 2018-1109 (Fed. Cir. June 14, 2019).

[48]  BMW, 926 F. 3d at 1302; Ball Bearings and Parts Thereof from Japan and United Kingdom, 80 Fed. Reg. 4,248 (Dep't of Commerce Jan. 27, 2015) and accompanying Issues & Decision Mem. at page 9.

Commerce must consider a respondent's level of culpability, or lack thereof, in its selection of a particular adverse margin.[49]  Commerce's failure to do so here was not in accordance with this law.

### A.    Petitioner's Conflict Claim Lacked Merit, Even Colorable Merit

On September 8, 2020, a week before the questionnaire response in issue here was due, Petitioner filed a submission in the investigation and served all parties claiming that the undersigned counsel and his firm Squire Patton Boggs (SPB) had a conflict of interest representing TKT that immediately precludes them from further participating in the investigation (*i.e.*, should be immediately disqualified).[50] That issue was before Commerce for action and decision the week before the questionnaire response was due. It was for Commerce to act.  Commerce failed to do anything.[51]

In its conflict claim, Petitioner cites two court decisions.  Both of these court decisions (one by this Court) confirm that Petitioner's filing to disqualify TKT counsel for claimed conflict of interest lacked merit, not even colorable merit, the opposite of what Petitioner represents as to these court decisions.

In their conflict claims, Petitioner first cites the court decision GEO Specialty Chemicals, Inc., 951 F. Supp. 2d 32 (D.D.C. 2013). There, the court rejected the argument that a 2012 Commerce new shipper dumping review as to glycine from China was the same or substantially related matter as Commerce's dumping review of two existing Chinese shippers of the same product in 2007-08 such that there could be a conflict of interest if the same counsel was involved

---

[49]  BMW, 926 F.3d at 1301.

[50] Petitioner Conflict Claim, Sept. 8, 2020, Bar Code 4023415, PD 45.

[51]  For record cites to the discussion in this brief of Petitioner conflict claims, see TKT Comment on Preliminary Determination, Jan 4, 2021, at pages 27-38, Bar Code 4071221-07-1 & 02, PD 337-338; TKT Response to Petitioner Conflict Claim, Sept. 17, 2020, Bar Code 4028101, PD 226.

in both, where in the second one representing a party in a way adverse to the party it previously represented in the first one who also participated in the second one. The court held that "each Commerce Department review or proceeding — including a new shipper review — is its own administrative proceeding ... claim, {or} investigation", and therefore qualifies as its own "matter." *Id*. at 43. This court stated that the party seeking disqualification failed to show that the 2007-08 and 2012 proceedings were substantially related, a threshold issue for a conflict of interest claim, finding that the complaint "never even hints at how the information learned in the {2007-08} representation might be useful to {petitioner} in its new shipper review, nor do the facts alleged in the complaint suggest that information from a 2007 and 2008 proceeding would have any bearing on a new shipper review conducted in 2013." *Id*. at 44.

Petitioner also cites this Court's decision <u>Makita v. United States</u>, 819 F. Supp. 1099 (CIT 1993). It too holds that there may only be a conflict if both matters are substantially related – *i.e.,* involve the business practices of the same company.

These two court decisions cited by Petitioner alone confirm that for SPB and the undersigned counsel to have a conflict of interest, they must have represented Petitioner in another matter that was substantially related to the TKT matter at hand. Petitioner fails to state what that is, much less explain or with any support.

Here the facts pertinent to (a) Petitioner's U.S. International Trade Commission (<u>ITC</u>) <u>injury U.S. producer</u> questionnaire responses where the undersigned counsel and SPB provided brief advice that is the basis of Petitioner's conflict claim as to the undersigned and SPB have nothing to do with (b) here SPB and the undersigned counsel represent TKT in <u>Commerce's</u> investigation into whether Kazakh <u>TKT</u> received subsidies from the Kazakh Government. Further, the ITC investigation period was <u>pre-2019</u>, while the Commerce investigation period

here as to TKT is <u>2019</u>, again confirming that the two matters are not substantially related to support a conflict of interest claim, Petitioner's own above cited court precedent. Petitioner never addresses, much less presents any credible case, that the matters overlap such that could potentially be a conflict of interest here. Commerce agreed that there was no conflict.[52] In so agreeing, Commerce does not find even a colorable Petitioner argument that Commerce had to address. Commerce states that there was no overlap, nor any claims of overlap to address, such that there was no conflict of interest.

Further, this Court also noted in <u>Makita</u>, also cited by Petitioner, that Commerce does not decide conflicts of interest. *Id.* at 1101-02, 1106-1108. Rather, conflicts are for other authorities to decide. *Id.*  Again, Petitioner misuses and misrepresents decisions of this Court to allege a conflict in the Commerce investigation here. Here, <u>Makita</u> further confirms that Petitioner had no colorable basis to even make the conflict claims at Commerce. Petitioner counsel necessarily had some other intent, where the only one possible intent seems to be a litigious one to disrupt TKT's ability to participate in the questionnaire process. Petitioner counsel is experienced. They know this. Finally, under this Court's <u>Makita</u> ruling that it is not for Commerce to decide conflicts, where in practice Commerce does not, that means that no deference should be given Commerce decisions here.

---

[52] <u>Decision Memorandum</u> at cmt 4, page 27; Commerce Rejection Of Conflict Claim, Oct. 6, 2020, Bar Code 4037358, PD 247 (As to cases where SPB represented Petitioners and TKT, "the cases are not substantially related. Accordingly, the petitioner's argument is directly inconsistent with the conclusions of the Court in GEO Specialty.")

-29-

Petitioner's conflict claim interfered in the investigation, as discussed below. This is the case whether the claim was made in good faith or not. The fact that it were made in bad faith (*i.e.,* there was no colorable basis for the claim) only exacerbates Petitioner's misconduct.[53]

**B.    Petitioners' Conflict Claims Interfered In The Investigation, As Substantial Evidence Demonstrates. There Is No Substantial Evidence Otherwise. Commerce's Failure To Consider It Is Then Not In Accordance With Law.**

Petitioner counsel first made the conflict claim just to SPB. SPB noted to Petitioner counsel that the conflict claim was without any basis, not even a colorable one, noting the above reasons. Since the claim had no merit, not even colorable merit, there was no reason for the undersigned counsel or SPB to tell TKT and the others, and especially since they were fully consumed and overwhelmed in answering Commerce questionnaires. All attention should focus on that, as TKT counsel recognized. Commerce agreed.

Despite the above, Petitioner counsel then filed the same conflict of interest claim in the Commerce CVD proceeding, serving all parties.[54] Petitioner counsel conflict claims thus had to be addressed with TKT, the five cross-owned affiliates and the Kazakh Government, all not fully familiar with U.S. legal process – they are in Kazakhstan -- inevitably diverting them from full (100%) focus on answering Commerce questionnaires.[55] From TKT's and all the others' perspective at this point, did they have counsel (*i.e.,* SPB and the undersigned)? Could they trust that counsel? Could they continue to provide that counsel their highly confidential information?

---

[53] Before Commerce, multiple times Petitioner counsel claimed that there was a good faith basis for its conflict claims and said essentially without more "see the record." Never once did Petitioner counsel cite record evidence, much less explain where there was a reasonable overlap as to the matter where SPB representing petitioners and where SPB represented TKT, for there to be even a good faith conflict claim.

[54]  TKT Oct. 2, 2020 filing at pages 1-2, Bar Code 4036100-01, PD 241.

[55]  TKT Oct. 2, 2020 filing at pages 1-2, Bar Code 4036100-01, PD 241.

Should they seek other counsel immediately? These are all legitimate questions that any responsible client would ask.

Companies are hard pressed time-wise to answer Commerce questionnaires as it is. Days, hours or even minutes can make a critical difference as to extremely tight deadlines. Commerce has seen that in many cases, and indeed cases cited herein.  Given the importance of meeting deadlines, TKT and its counsel tried to leave a safety margin, and as big a one as possible. Petitioner's interference took away from building in that safety margin for unanticipated events in answering a Commerce questionnaire.[56]

Commerce's October 1, 2020 letter (at 1) rejecting TKT's questionnaire response as purportedly untimely – i.e., one hour, 41 minutes -- indicates that one hour, 41 minutes is significant time as to timely answering a questionnaire, where often respondents are pushed all the way to the deadline to file their questionnaire responses, not uncommon minutes before. Petitioner conflict claims, loudly and repeatedly made in this proceeding, consumed far more than one our, 41 minutes of all concerned in the TKT questionnaire response process, and at a particularly critical time in the questionnaire response process.

Petitioner itself claims that on September 8, 2020, they filed with Commerce and served all parties "a detailed analysis of SPB's conflict of interest", "a fulsome factual and legal analysis," a "detailed factual and legal analysis", much of which Petitioner designated confidential, that TKT and the five cross-owned respondents and Government of Kazakstan (GOK) could not see or be told, even though they were being told that their counsel had to be immediately removed from the case because it had a conflict of interest as representing the Petitioner.[57] Petitioner repeatedly

---

[56] TKT Comments On The Preliminary Determination, Jan. 4, 2021 at page 9, Bar Code 4071221-01 & 02, PD 337-338.

[57]  Petitioner Oct. 16, 2020 filing at pages 2 & 5-6, Bar Code 4041089-01, PD 252.

bombarded with these claims in their disinformation campaign. On its face, such lengthy Petitioner

filings takes the time of all concerned to assess and immediately. Further, if Petitioner counsel

believed the claims as Petitioner claims, as it said repeatedly, and Petitioner counsel is experienced

counsel, one can rest assured that TKT, the five cross-owned companies and the GOK gave them

credibility and attention too and felt had to consider.[58]

> Commerce replied to the above saying that:

> we find it difficult to understand why TKS/TKT or its counsel would divert
> significant resources from the preparation of the questionnaire response to respond
> to the petitioners' disqualification submission.[59]

Actually, TKT and its counsel did not. There is no evidence, much less substantial

evidence, supporting Commerce's claim here. Substantial evidence, indeed all evidence, indicates

otherwise. The record shows that between the time Petitioners made the claim in the investigation

and TKT filed its extension request and then questionnaire response, TKT and its counsel did not

file any response with Commerce answering Petitioner's conflict of interest, disqualification filing.

Further, Commerce entirely fails to address our point. During this time, time was

necessarily diverted as the companies internally assessed the conflict claim, seeking to understand

it, what it meant and whether they had confidence continuing with the undersigned and SPB as

their counsel. Commerce fails to address that point, much less note any evidence, much less

substantial evidence to the contrary. Given the extremely tight deadlines, it does not take much

time to disrupt seriously the questionnaire process to unfortunate consequences.

---

[58]  This is not be the first time that TKT has been subject to misuse of its confidential information
in a Commerce CVD proceeding by Petitioner, making TKT especially sensitive to such issues.
Petitioner admits entering into a non-disclosure agreement (NDA) with TKT as to a joint venture
involving silicon metal, the subject product in this investigation, and then violating that NDA by
using the information to pursue a CVD action against TKT.  See TKT Comment On The
Preliminary Determination, Jan. 4, 2021 at page 41. Bar Code 4071221-01 & 02, PD 337-338.

[59]  <u>Decision Memorandum</u> at cmt. 4, page 27.

III.    COMMERCE'S ADVERSE INFERENCES ARE UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE NOT IN ACCORDANCE WITH LAW

The contested decision imposed a 160% adverse inference CVD import cash deposit requirement on TKT for claimed not timely filing a questionnaire response.

A.    __TKT__ Acted To The Best Of Its Ability. There Is No Evidence, Much Less Substantial Evidence, Otherwise. Commerce's Use Of Adverse Inferences As To TKT Actions Was Thus Not In Accordance With Law.

The CVD/AD Statute – *i.e.*, Section 776(b) of the Tariff Act of 1930, as amended -- "permits Commerce to 'use an inference that is adverse to the interests of {a respondent} in selecting from among the facts otherwise available,' only if …the respondent 'has failed to cooperate by not acting to the best of its ability to comply."[60]

The Federal Circuit instructs that "an adverse inference may not be drawn merely from a failure to respond … only under circumstances in which it is reasonable for {Commerce} to expect that more forthcoming responses should have been made."[61] In other words, even if Commerce rejects a submission as untimely, the courts and statute state that "more is required ... before an adverse inference may be drawn."[62] Here, more is not shown, much less with any evidence, must less with substantial evidence. TKT acted to the best of its ability. *See* above.

---

[60] Decision Memorandum, at cmt 3, pages 23-27 (emphasis added); Nippon Steel Corp. v. United States, 373 F.3d 1373, 1373 & 1381 (Fed. Cir. 2003).

[61] Nippon Steel Corp., 373 F.3d at 1381.

[62] Nippon Steel Corp. v. United States, 118 F. Supp. 2d, 1366, 1377 (CIT 2000); Nippon Steel v. United States, Slip Op 01-52 at 10-15 (CIT April 20, 2001); Acciai Speciali Terni, S.p.A v. United States, 120 F. Supp. 2d 1101, 1104 (CIT 2000); F. Lli De Cecco Di Filippo Fara San Martino S.p.A. v. United States, 21 CIT 1124, 980 F. Supp. 485 (1997)).

**B.      Commerce Use Of Adverse Inferences As To <u>The Kazakh Government</u> Is Unsupported By Substantial Evidence And Otherwise Not In Accordance With Law**

This Court rejects a view that Commerce can *per se* impose adverse inferences on a respondent company for the actions of its government.[63]

In reply, Commerce says that:

> an adverse inference in a CVD investigation may have "a collateral impact on a cooperating party," without being rendered "improper." Where, as here, an adverse inference made against the {government} "collaterally reaches" a cooperating company that is "within the {country}, benefitting directly from subsidies the {government} may be providing," then the adverse inference is permissible, because it "has the potential to encourage the {government} to cooperate so as not to hurt its overall industry."[64]

But here there is only one Kazakh silicon metal producer, TKT.[65] There is no evidence otherwise, much less substantial evidence otherwise. Not even Commerce claims otherwise. So Commerce's claim here and above cited decision of this Court does not apply.

IV.    **REQUESTED RELIEF**

There is no substantial evidence that TKT has benefited from any subsidies.  TKT has been denied the right to meaningfully participate in the investigation (*i.e.,* answer subsidy questionnaires).  Commerce has relied on total adverse inferences – *i.e.,* speculation – as  opposed to actual evidence, much less substantial evidence, to calculate any subsidy margin. Reasonable people do not decide that way. There is thus no basis – *i.e.*, substantial evidence, as to what a reasonable person would accept – of subsidies. A reasonable person would not deny the accused a

---

[63] <u>Clearon Corp. v. United States</u>, Slip Op. 20- 141 (CIT Oct. 8, 2020); <u>Guizhou Tyre Co. v. United States,</u> 415 F. Supp. 3d 1402, 1405 (CIT 2019).

[64] <u>Decision Memorandum</u> at cmt 8, pages 40-50 *(*citing <u>Hebei Jiheng Chems. Co. v. United States,</u> 161 F. Supp. 3d 1322, 1332 (CIT Feb.18, 2016); <u>Fine Furniture II</u>, 748 F.3d at 1372-73).

[65] Commerce, Preliminary Determination Decision Memorandum, Nov. 27, 2020 at page 2, Bar Code 4059305, PD 323;  CVD Petition, June 30, 2020, Vol. 1 at pages 17-19, Bar Code 3992974-01, PD 1 (Note that all indicated producers are TKT).

-34-

right to respond as to subsidy allegations and then decide there were subsidies This situation is due to Commerce's own actions (at the strong, persistent urging of Petitioners). A negative final CVD determination should thus issue as a matter of law.[66]

We note that relief could take the form of an affirmative subsidy finding where no duties or cash deposits are imposed pending any later Commerce administrative review, a do-over of what Commerce should as a matter of law done in the original investigation -- to actually determine if there are any subsidies. With approval of this Court, Commerce has done that before, at least where the consequence of its investigation was substantial evidence of subsidies as to a particular country, but no substantial evidence of the actual subsidy margin.[67] Here though, in this investigation, there is not even substantial evidence of any subsidies.  *See* above. Thus, as a matter of law, a negative final subsidy determination is warranted.

At a minimum, as a matter of law, Commerce should accept TKT's questionnaire response (*see* above) and not use any adverse inferences and proceed to calculate a subsidy margin for TKT based on its questionnaire response.

## III.     REQUEST FOR EXPEDITED ACTION

To accelerate this matter, TKT filed with this Court both a summons and complaint (ECF 1 & 6) on April 19, 2021, the earliest possible date to do so permitted by statute – *i.e.*, the date

---

[66] Twice before these Petitioners have had their requested CVD/AD investigation and duties terminated for their bad faith conduct. *See* TKT Comment On The Preliminary Determination, Jan. 5, 2021 at pages 39-40, Bar Code 4071221-01 & 02, PD 337-338, for Petitioners violating U.S. antitrust laws and/or misrepresentation to the U.S. CVD/AD trade agencies.

[67] Small Business Telephones from Taiwan, 43 Fed. Reg. 42,543, 42,550 (Dep't of Commerce Oct. 17, 1989), affirmed in Auto Telecom Co., Ltd. v. United States, 765 F. Supp. 1094 (CIT 1991).

when Commerce issued the CVD Order.[68]  TKT pushed the other parties (*i.e.,* the United States and Petitioners) to consent to a scheduling order for briefing before this Court as quick as possible, and even before the administrative record was filed.  But the other parties slow walked the process.

As a result of the contested decision, TKT is subject to a 160% CVD cash deposit requirement with U.S. Customs on U.S. imports of its silicon metal.  That stops any imports until this matter is resolved. No one can meet such a cash flow requirement. That would seem to go without saying, *i.e.*, take judicial notice.  Imagine if one had to pay a 160% cash deposit plus the purchase price for one's purchases on an ongoing basis. It defines credulity to say that does not deter purchasers, especially as to a product that Petitioners claim and the U.S. International Trade Commission found is a commodity, price sensitive product. It would be pure fantasy to say otherwise, to use this Court's review standard.

Commerce and Petitioner had many opportunities below to address the issues. They declined. They chose vacuous, unreasonable, ever shifting positions. Providing yet another opportunity just delays and enables their delay.

If this court matter is delayed so that the results of any Commerce first administrative review supersede it, and so claimed moot, TKT's statutory right to meaningful judicial review of Commerce's decision in the original investigation is denied.

Justice delayed is justice denied.

## IV.    CONCLUSION

Reduced to its essence, this is a simple case. TKT timely requested a one-day extension to answer a questionnaire.  In so doing, TKT did exactly as Commerce's regulations require and also

---

[68] <u>Silicon Metal from the Republic of Kazakhstan</u>, 86 Fed. Reg. 20,365 (Dep't of Commerce April 19, 2021), Bar Code 4111325-01, PD 359.

as Commerce instructed in its questionnaire to TKT. There is no evidence, much less substantial evidence, otherwise. Commerce admits that it had time to consider that submitted questionnaire response – submitted within hour and 41 minutes of the one day requested extension -- to achieve its statutory mandate to calculate accurately TKT's subsidy margin. Yet realizing and renouncing its initial reasons to reject the questionnaire response – after seeing TKT's response thereto -- Commerce was off to the races to come up with a new reason. In hare-raising style, Commerce engaged in a litany of shifting, contradictory stories, retracting one, then picking up another, and so on, in prolonged, dilatory fashion, forcing a game of whack-a-mole to oppose. Each new Commerce story is unsupported by substantial evidence, nor in accordance with law. Commerce thereby subverts its statutory mandate to calculate accurately the subsidy margin.  Commerce fully used the statutory period, at which point it can only reach an affirmative subsidy finding if supported by substantial evidence of record.  Here, because of Commerce's conduct of the investigation, at Petitioner behest, there is not substantial evidence to support an affirmative countervailing duty determination.  A negative countervailing duty determination should have issued as a matter of law.

   We appreciate the Court's attention to this matter.

        Very truly yours,

        Peter Koenig
        Counsel to TKT

July 21, 2021

## WORD COUNT CERTIFICATE

The undersigned counsel certifies that the Word count of this brief is 10,806 words and so within the Court's 15,000 word limit of this brief.

Peter Koenig
Counsel to TKT

July 21, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TAU-KEN TEMIR LLP, and<br>JSC NMC TAU-KEN SAMRUK,<br><br>                    Plaintiffs,<br><br>MINISTRY OF TRADE AND INTEGRATION OF<br>THE REPUBLIC OF KAZAKHSTAN,<br><br>                    Plaintiff-Intervenor,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant,<br><br>          and<br><br>GLOBE SPECIALTY METALS, INC., and<br>MISSISSIPPI SILICON LLC,<br><br>                    Defendant- Intervenors. | Before: Leo M. Gordon, Judge<br><br>Court No. 21-00173 |

## **ORDER**

It is hereby ORDERED that the U.S. Department of Commerce issue a negative final countervailing determination in Silicon Metal from the Republic of Kazakhstan, C-834-811.


_____                                    _____
Date                                                                      Judge Leo. M. Gordon

-39-