# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| TAU-KEN TEMIR LLP and JSC NMC TAU-KEN SAMRUK,<br>  Plaintiffs,<br>  and<br>MINISTRY OF TRADE AND INTEGRATION OF THE REPUBLIC OF KAZAKHSTAN,<br>  Plaintiff-Intervenor,<br>  v.<br>UNITED STATES,<br>  Defendant,<br>  and<br>GLOBE SPECIALTY METALS, INC. and MISSISSIPPI SILICON LLC,<br>  Defendant-Intervenors. | Court No. 21-00173 |

## DEFENDANT'S RESPONSE TO PLAINTIFFS'
## MOTIONS FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

L. MISHA PREHEIM
Assistant Director

COUNSEL:
Jared M. Cynamon
Attorney
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

BRET R. VALLACHER
Trial Attorney
Civil Division, Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-0465

Dated September 27, 2021

*Attorneys for Defendant*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| TAU-KEN TEMIR LLP and JSC NMC TAU-KEN SAMRUK,<br>                    Plaintiffs,<br>      and<br>MINISTRY OF TRADE AND INTEGRATION OF THE REPUBLIC OF KAZAKHSTAN,<br>                    Plaintiff-Intervenor,<br>      v.<br>UNITED STATES,<br>                    Defendant,<br>      and<br>GLOBE SPECIALTY METALS, INC. and MISSISSIPPI SILICON LLC,<br>                    Defendant-Intervenors. | Court No. 21-00173 |

## <u>ORDER</u>

Upon consideration of the motions for judgment upon the agency record filed by plaintiffs, responses thereto, plaintiffs' replies, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' motions are DENIED; and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____                    _____
                                                                      SENIOR JUDGE

## <u>TABLE OF CONTENTS</u>

STATEMENT PURSUANT TO RULE 56.2 .................................................................. 2

ARGUMENT ....................................................................................................................... 2

   I.   Standard Of Review ................................................................................. 3

   II.   Commerce Properly Rejected TKT's Untimely Submission ............................ 4

      A.  Legal Framework ........................................................................... 4

      B.  Commerce's Rejection Of TKT's Untimely Submission Was Not An Abuse of Discretion ........................................................................ 5

         i.    No Regulations Required Commerce To Accept The Untimely Submission.............. 6

         ii.   Commerce Does Not Need To Demonstrate That Granting An Extension Would Hinder Its Investigation In Each Case ........................................ 10

         iii.  Commerce's Decision To Reject The Untimely Filing Is In Accordance With Caselaw ...................................................... 11

         iv.  Commerce's Decisions In Other Proceedings Do Not Prevent It From Rejecting TKT's Submission Here .................................. 14

  III.  Commerce's Decision To Apply Facts Available With A Total Adverse Inference Is Supported By Substantial Evidence And Is In Accordance With The Law...................... 15

      A.  Legal Framework ......................................................................... 15

      B.  Commerce Reasonably Applied Facts Available .......................................... 16

  IV.  Commerce Did Not Abuse Its Discretion When It Determined That Mississippi Silicon LLC Did Not Interfere With TKT's Ability To File Its Questionnaire Response ............. 21

    CONCLUSION.................................................................................................. 23

# <u>TABLE OF AUTHORIES</u>

**CASES** PAGE(S)

*Artisan Mfg. Corp. v. United States,*
   978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ........................................... 14

*Atl. Sugar, Ltd. v. United States,*
   744 F.2d 1556 (Fed. Cir. 1984) ............................................................. 3

*Bebitz Flanges Works Private Ltd. v. United States,*
   433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) .......................................... 4, 10, 13, 17

*Clearon Corp. v. United States,*
   474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020) .......................................... 19, 20

*Cleo Inc. v. United States,*
   501 F.3d 1291 (Fed. Cir. 2007) ............................................................. 3

*Consol. Edison Co. of N.Y. v. NLRB,*
   305 U.S. 197 (1938) ........................................................................... 3

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966) ........................................................................... 3

*Deacero S.A.P.I. de C.V. v. United States,*
   996 F.3d 1283 (Fed. Cir. 2021) ............................................................. 16

*Dongtai Peak Honey Indus. v. United States,*
   777 F.3d 1343 (Fed. Cir. 2015) ........................................................... *passim*

*FPC v. Transcon. Gas Pipe Line Corp.,*
   423 U.S. 326 (1976) ........................................................................... 4

*Fujitsu Gen. Ltd. v. United States,*
   88 F.3d 1034 (Fed. Cir. 1996) ............................................................. 3

*Goldlink Indus. Co. v. United States,*
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) .......................................... 4

*Guizhou Tyre Co. v. United States,*
   415 F. Supp. 3d 1402 (Ct. Int'l Trade 2019) .......................................... 19, 20

*In re Budge Mfg. Co.,*
   857 F.2d 773 (Fed. Cir. 1988) ............................................................. 23

*INS v. Elias-Zacarias,*
   502 U.S. 478 (1992) ........................................................................... 3, 8, 23

*Maverick Tube Corp. v. United States,*
   107 F. Supp. 3d 1318 (Ct. Int'l Trade 2015) ............................................. 14

*Mukland Ltd. v. United States,*
   767 F.3d 1300 (Fed. Cir. 2014) .............................................................. 19

*Neo Solar Power Corp. v. United States,*
   190 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ............................................ 18

*Ningbo Dafa Chem. Fiber Co. v. United States,*
   580 F.3d 1247 (Fed. Cir. 2009) .............................................................. 16

*Nippon Steel Corp. v. United States,*
   118 F. Supp. 2d 1366 (Ct. Int'l Trade 2000) ............................................ 19

*Nippon Steel Corp. v. United States,*
   25 C.I.T. 1192 (2001) ........................................................................... 17

*Nippon Steel Corp. v. United States,*
   337 F.3d 1373 (Fed. Cir. 2003) ............................................... 15, 16, 17, 19

*POSCO v. United States,*
   353 F. Supp. 3d 1357 (Ct. Int'l Trade 2018) ............................................ 17

*PSC VSMPO-Avisma Corp. v. United States,*
   688 F.3d 751 (Fed. Cir. 2012) .......................................................... 4, 12, 20

*Qingdao Sea-Line Trading Co. v. United States,*
   766 F.3d 1378 (Fed. Cir. 2014) .......................................................... 14, 15

*QVD Food Co. v. United States,*
   658 F.3d 1318 (Fed. Cir. 2011) .............................................................. 15

*Reiner Brach GmbH & Co. v. United States,*
   206 F. Supp. 2d 1323 (Ct. Int'l Trade 2002) ............................................. 4

*Shandong Rongxin Imp. & Exp. Co. v. United States,*
   203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ............................................. 3

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,*
   435 U.S. 519 (1978) .............................................................................. 4

*Yantai Timken Co. v. United States*,
  521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007) ........................................................................ 4, 13

## <u>STATUTES</u>

19 U.S.C. § 1516a ............................................................................................................. 3

19 U.S.C. § 1677e ....................................................................................................... *passim*

## <u>REGULATIONS</u>

19 C.F.R. § 351.302 ................................................................................................... *passim*

19 C.F.R. § 351.303 ......................................................................................................... 4, 6

19 C.F.R. § 351.308 ....................................................................................................... 15, 16

## <u>OTHER AUTHORITIES</u>

*Final Rule: Extension of Time Limits*,
  78 Fed. Reg. 57790, 57792 (September 20, 2013) ............................................................ *passim*

SAA, H.R. Doc. No. 103-316, 870,
  reprinted in 1994 U.S.C.C.A.N. 4040, 4199 (1994) ................................................................ 21

*Silicon Metal from the Republic of Kazakhstan*,
  86 Fed. Reg. 11,725 (Dep't of Commerce February 26, 2021) .................................................... 2

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| _____ ) | |
| TAU-KEN TEMIR LLP and JSC NMC ) <br> TAU-KEN SAMRUK, ) <br>                  Plaintiffs, ) <br>     and ) <br> ) <br> MINISTRY OF TRADE AND INTEGRATION ) <br> OF THE REPUBLIC OF KAZAKHSTAN, ) <br>                  Plaintiff-Intervenor, ) <br>     v. ) <br> ) <br> UNITED STATES, ) <br>                  Defendant, ) <br> ) <br>     and ) <br> ) <br> GLOBE SPECIALTY METALS, INC. and ) <br> MISSISSIPPI SILICON LLC, ) <br>                  Defendant-Intervenors. ) <br> _____ ) | Court No. 21-00173 |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTIONS FOR JUDGMENT UPON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response to the motions for judgment upon the agency record filed by plaintiffs Tau-Ken Temir LLP and JSC NMC Tau-Ken Samruk (collectively, TKT) and plaintiff-intervenor the Ministry of Trade and Integration of the Republic of Kazakhstan (MTI).

Plaintiffs and plaintiff-intervenor challenge the Department of Commerce's (Commerce) final determination in the countervailing duty investigation of silicon metal from the Republic of Kazakhstan.  As demonstrated below, plaintiffs' motions should be denied because Commerce's final determination is supported by substantial evidence and otherwise in accordance with the law.

## STATEMENT PURSUANT TO RULE 56.2

### I.     The Administrative Determination Under Review

The administrative determination under review is *Silicon Metal from the Republic of Kazakhstan*, 86 Fed. Reg. 11,725 (Dep't of Commerce Feb. 26, 2021) (Final Results) and its accompanying Issues and Decision Memorandum for the Final Determination of the Countervailing Duty Investigation of Silicon Metal from the Republic of Kazakhstan (Dep't of Commerce Feb. 22, 2021), available at https://enforcement.trade.gov/frn/summary/kazakhstan/2021-04032-1.pdf (last visited on Sept. 24, 2021) (Decision Memorandum).

### II.    Issues Presented For Review

1.     Whether Commerce's rejection of TKT's untimely submission of the questionnaire response is supported by substantial evidence and in accordance with the law.

2.     Whether Commerce's application of facts available with an adverse inference is supported by substantial evidence and is in accordance with the law.

3.     Whether TKT's failure to timely file its questionnaire response was caused by Mississippi Silicon's conflict of interest claim, such that the claim materially interfered with TKT's ability to file its initial questionnaire response.

### ARGUMENT

Commerce appropriately rejected plaintiffs' untimely questionnaire response and correctly applied adverse facts available in establishing the countervailing duty.  In an attempt to avoid this result, plaintiffs ask this Court—without any basis in law or fact—to prevent Commerce from: enforcing its own deadlines, applying its regulations concerning adverse inferences, and rejecting plaintiffs' post-hoc excuse that Mississippi Silicon LLC "interfered" with its response by raising a conflict-of-interest claim.  In support, plaintiffs offer little more

than conclusory statements lacking citations to the record, and the occasional meritless argument. This Court should reject plaintiffs' arguments and deny plaintiffs' motions.

## I.    <u>Standard Of Review</u>

In reviewing Commerce's countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). This takes into account "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote omitted). Substantial evidence may thus be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

When Congress entrusts an agency to administer a statute that demands inherently fact-intensive inquiries, such as in this case, the agency's conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992); *Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade 2017) (noting tremendous deference to Commerce's factual findings). It is improper to overturn an agency determination "simply because the reviewing court would have reached a different conclusion based on the same record," *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007), and the Court will not substitute its judgment for that of Commerce in choosing between two fairly conflicting views,

even if it could justifiably have made a different choice had the matter been before it *de novo*,

*Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006).

## II.   Commerce Properly Rejected TKT's Untimely Submission

### A.  Legal Framework

The Court of Appeals for the Federal Circuit has made clear that "{a}bsent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."  *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543–44 (1978)).  "Accordingly, absent such constraints or circumstances, courts will defer to the judgment of an agency regarding the development of the agency record."  *Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343, 1351 (Fed. Cir. 2015) (*Dongtai Peak*) (citing *PSC VSMPO*, 688 F.3d at 760).  "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'"  *PSC VSMPO*, 688 F.3d at 760 (cleaned up) (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  As a result, "Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits."  *Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370–71 (Ct. Int'l Trade 2007) (*Yantai*) (citing *Reiner Brach GmbH & Co. v. United States,* 206 F. Supp. 2d 1323, 1334 (Ct. Int'l Trade 2002)); *see also Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1309, 1325 (Ct. Int'l Trade 2020) (*Bebitz AD*).

Commerce's regulations provide that "{a}n electronically filed document must be received successfully in its entirety by the Department's electronic records system, ACCESS, by 5 p.m. Eastern Time on the due date."  19 C.F.R. § 351.303(b)(1).  However, a party may request

an extension "{b}efore the applicable time limit . . . expires," 19 C.F.R. § 351.302(c), and

Commerce "may, for good cause, extend any time limit established by this part," 19 C.F.R.

§ 351.302(b).  Commerce's *Final Rule* warns, however, that "the likelihood of the Department

granting an extension will decrease the closer the extension request is filed to the applicable time

limit because the Department must have time to consider the extension request and decide on its

disposition." *Final Rule*, 78 Fed. Reg. 57,790, at 57,792 (September 20, 2013) (*Final Rule*).

Accordingly, "{p}arties should not assume that they will receive an extension of a time limit if

they have not received a response from the Department." *Id.*  Additionally, to accommodate

such circumstances, the *Final Rule* provides that "{f}or submissions that are due at 5:00 p.m., if

the Department is not able to notify the party requesting the extension of the disposition of the

request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.)

on the next work day." *Id.*

## B.  Commerce's Rejection Of TKT's Untimely Submission Was Not An Abuse Of Discretion

About an hour before its September 15, 5:00 p.m. deadline to file its questionnaire

responses—at 3:50 p.m.—TKT filed a third extension request to extend its filing deadline until

September 16.  *See* TKT's Letter, "Silicon Metal from Kazakhstan," dated September 15, 2020,

PD 220 (Third TKT Extension Request).[1]  However, as foreshadowed by the warnings in the

*Final Rule*, because of the proximity of the extension request to the 5:00 p.m. deadline,

Commerce was unable to respond by the deadline.  *See* Decision Memorandum at 15.

Accordingly, pursuant to the Final Rule, TKT's deadline was automatically extended to

September 16, 2020, at 8:30 a.m.  *See Final Rule,* 78 Fed. Reg. 57,790, at 57,792.  However,

---

[1] "PD__" refers to the public administrative record.

TKT did not finish filing until after the 8:30am deadline.  *See* Decision Memorandum at 15; Br. at 7.[2]  On October 1, 2020, Commerce informed TKT that it was rejecting TKT's untimely submission on the grounds that TKT failed to file the entirety of its response by 8:30 a.m. on September 16, 2020.  *See* Letter, "Countervailing Duty Investigation of Silicon Metal from the Republic of Kazakhstan: Rejection and Removal of Submission from the Record," dated October 1, 2020, PD 238 (Commerce's Rejection Letter).

TKT argues that, in rejecting its questionnaire response, Commerce failed to follow its regulations, court precedent, and its practice.  *See* Plaintiff Tau-Ken Temir LLP et, al. (TKT) Rule 56.2 Brief for Judgment on the Agency Record, ECF. No. 33 (Br.), at 4–22.  As explained below, there is no merit to TKT's arguments.

### i.      No Regulations Required Commerce To Accept The Untimely Submission

As an initial matter, TKT repeatedly mischaracterizes Commerce's October 1 letter as rejecting TKT's submission on the sole ground that TKT's filings were incomplete—not that they were also untimely—and, based on this mischaracterization, argues throughout its brief that Commerce engaged in "ever shifting positions," Br. at 36; *see also* Br. at 9.  This is incorrect. The language of Commerce's letter encompasses both the untimeliness and the incompleteness of TKT's filing.  *See* Commerce's Rejection Letter ("In accordance with 19 CFR 351.303(b)(1), an electronically filed document must be received successfully in its entirety by Commerce's electronic records system, ACCESS, by 5 p.m. Eastern Time on the due date, which in this instance was September 15, 2020"); *id.*  ("These filings fail to meet the requirements of 19 CFR

---

[2] TKT's brief inconsistently refers to the time it filed.  *Compare* Br. at 7 ("TKT filed it at 10:41 am that day"); *id.* at 19 (TKT "filed its questionnaire response the early morning 10:41am after the deadline date") with *id.* at 7 ("Counsel was able to file . . . by 10:11am").

351.303, which stipulate that the submission must be filed in its entirety by 5:00 p.m. on the due

date specified, or applying the rule found in the Extension of Time Limits notice, by 8:30 a.m. on

the following work day.  Moreover, your filings are missing the business proprietary versions of

{various exhibits}.").

TKT argues that "regulations" required Commerce to accept the untimely submission.

Br. at 4–9.  But in support, TKT only points to one regulation (pertaining only to the timeliness

of an extension request) and its own mischaracterization of the *Final Rule*.  *Id.*

TKT first argues that, because it filed its extension request before the deadline, its request

was timely under 19 C.F.R. § 351.302(c).  Br. at 6.  We do not dispute that TKT's extension

request, though last-minute, was timely.  But the mere fact that a request for an extension of time

is timely does not compel Commerce to grant it.  Indeed, "Commerce may grant extension

requests *if it determines the extension request provides good cause for extending the deadline*."

*Dongtai Peak*, 777 F.3d at 1352 (emphasis added) (citing 19 C.F.R. § 351.302(b)).  In *Dongtai*

*Peak*, the Federal Circuit determined Commerce properly exercised its discretion in rejecting the

respondent's submission because the respondent failed to show "good cause" for an extension as

required by § 351.302(b).  *Id.* at 1351.  Notably, even though the *Dongtai Peak* respondent cited

technical difficulties and an overseas client, the Federal Circuit held that the respondent did not

demonstrate why the company was unable to file its extension request earlier.  *Id*.

Similarly, the only reasons TKT proffers for its third extension relate to vague

descriptions that neither explain why TKT required an extra 17 hours and 11 minutes to make its

filing, nor why TKT's self-proclaimed "experienced counsel" did not seek another extension

earlier when he had still not received required materials from his client at any point until the day

of the 5:00 p.m. filing deadline.  *See* Br. at 5.  The reasons proffered by TKT do not constitute

good cause—much less demonstrate a record that is "so compelling that no reasonable factfinder" could reach the same conclusion as Commerce, *Elias-Zacarias*, 502 U.S. at 483–84.

Finally, TKT asserts that "the *Final Rule* (78 Fed. Reg. at 57795-96) states that Commerce will not adopt rules that are 'inflexible to permit' Commerce 'to effectively and fairly administer the AD and CVD laws.'"  Br. at 8.  That is a mischaracterization of the *Final Rule*.  In the *Final Rule*, Commerce explained that it was rejecting a potential rule under which it would "not consider any untimely-filed extension requests" because it considered "this alternative to be too inflexible to permit the Department to effectively and fairly administer the AD and CVD laws."  *See Final Rule,* 78 Fed. Reg. 57,790, at 57,792.  Thus, the language selectively quoted by plaintiffs does not extend farther than Commerce declining to adopt a per se rule to always reject untimely extension requests.  In any case, Commerce's decision to reject TKT's brief does not represent a departure from Commerce "effectively and fairly administer{ing}" the CVD laws for at least three reasons.

First, TKT had ample notice of the consequences of failing to timely file.  Indeed, the questionnaires that TKT received clearly warned that "Commerce will not accept any requested information submitted after the established deadlines."  *See* Commerce's Letter, "Countervailing Duty Investigation of Silicon Metal from the Republic of Kazakhstan: Supplemental Questionnaire," dated August 12, 2020, PD 33 at 1 (First Affiliation Supplemental Questionnaire); Commerce's Letter, "Investigation of Silicon Metal from the Republic of Kazakhstan: Countervailing Duty Questionnaire," dated July 23, 2020, PD 27 at 3 (Initial Questionnaire).

Second, the *Final Rule* provided TKT notice of the decreasing likelihood of receiving an extension of time the closer the extension request was to the deadline.  It explained that "the

likelihood of the Department granting an extension will decrease the closer the extension request is filed to the applicable time limit because the Department must have time to consider the extension request and decide on its disposition." *See Final Rule,* 78 Fed. Reg. 57,790, at 57,792. Accordingly, "{p}arties should not assume that they will receive an extension of a time limit if they have not received a response from the Department." *Id.*

Third and finally, the *Final Rule* effectively provided TKT an automatic extension until 8:30 a.m. the next day because TKT had submitted a request for an extension of time that Commerce had not acted upon by the 5:00 p.m. deadline. *See id.* ("For submissions that are due at 5:00 p.m., if the Department is not able to notify the party requesting the extension of the disposition of the request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.) on the next work day.").

In light of the extensive notice provided about both the consequences of failing to submit prior to the deadlines and the decreased likelihood of Commerce granting an extension request filed close to the deadline, along with TKT being provided the automatic extension, TKT has not provided any reason for this Court to conclude that the *Final Rule*, or Commerce's adherence to it here, was unfair.[3]

---

[3] TKT's counsel appears to be offended by Commerce's assertion that he "gambled unwisely" when he refrained from submitting an extension request earlier when he knew he had not received necessary materials from his client until just six hours before the submission deadline. *See* Br. at 11–13; Decision Memorandum at 19; *see also* TKT's Letter, "Silicon Metal from Kazakhstan" dated October 2, 2021 PD 241 at 2 (citing "{r}emaining portions of the questionnaire responses were received by the undersigned counsel on the September 15 due date, 10:58 am, via the cloud."). TKT repeatedly asserts that Commerce was incorrect to assume that its counsel is a "gambling man," Br. at 12, and argues "{t}here is no evidence, much less substantial evidence, that counsel decided to gamble." Br. at 11. In other words, TKT appears to construe this idiomatic expression as a literal finding of fact. However, this implausible interpretation does not provide any grounds for reversal.

ii.     **Commerce Does Not Need To Demonstrate That Granting An Extension Would Hinder Its Investigation In Each Case**

TKT next argues that granting TKT's one-day extension request would not have hindered Commerce's investigation because there was still some time before Commerce's next deadline, but TKT provides no authority for the proposition that this is the standard by which Commerce must evaluate extension requests. Br. at 9–10, 18.

In fact, "Commerce is *not* required to provide good cause or justification for rejecting untimely submissions and proceeding as if respondent has not provided requested information*." Bebitz (AD)*, 433 F. Supp. 3d at 1327 (citing *Dongtai Peak*, 777 F.3d at 1352).  Rather, as explained above, the standard imposes a burden *on the respondent* to show "good cause." Moreover, "it is not for {TKT} to . . . dictate to Commerce whether and when Commerce actually needs the requested information," *Dongtai Peak*, 777 F.3d at 1352.  Indeed, the Federal Circuit rejected another respondent's "presumption that Commerce had adequate time to process this review," on the grounds that "Commerce should not be burdened by requiring acceptance of untimely filings. . . ."  *Dongtai Peak*, 777 F.3d at 1352.

In any case, TKT provides no citations to the record to corroborate its assertion that granting the extension would not hinder Commerce.[4]  In fact, the memorandum explains that:

> Commerce establishes deadlines so that it can conduct this (and its numerous other trade remedy proceedings) in an efficient manner within its statutory and regulatory deadlines.  Therefore, it is critical that parties file documents by the established deadline, or timely request an extension of such a deadline such that Commerce can provide a considered response. **Timely filings and timely extension requests contribute to Commerce's efficient administration of the numerous cases before it and the AD/CVD laws.**  Conversely, untimely filings and last-minute extension requests hinder the efficient conduct of our

---

[4] At various points, TKT states that "Commerce admits that granting TKT's one day extension request and considering its questionnaire in particular would not have been be {sic} a burden as to this investigation," Br. at 20; *see also id.* at 37.  However, TKT points to no citations to the record showing this to be the case, and we are not aware of any such admissions.

proceedings, and require that Commerce devote additional time and resources to addressing such untimely filings and last-minute requests. **Additionally, although the burden associated with a single late-filed questionnaire response may be perceived as minimal, that burden is not minimal when aggregated across all proceedings**. Accordingly, for the efficient conduct of its proceedings, it is critical that parties adhere to the deadlines established by Commerce.

Decision Memorandum at 17 (emphases added).  This is consistent with the Federal Circuit's recognition that Commerce requires a "significant amount of time and effort to gather the necessary information, consider the facts of the record, and provide interested parties with an appropriate period for comments and rebuttal comments." *Dongtai Peak*, 777 F.3d at 1353. Thus, TKT's apparent position—that Commerce should permit untimely filings as a matter of course as long as Commerce does not demonstrate hindrance—not only flips the burden of demonstrating "good cause" on its head, but invites a death by a thousand cuts, which, in aggregate, work considerable harm to Commerce's investigative functions.

### iii.    Commerce's Decision To Reject The Untimely Filing Is In Accordance With Caselaw

TKT argues that *Dongtai Peak* stands for the proposition that "Commerce should have considered and accepted TKT's questionnaire response" because TKT "filed the extension request before the deadline and then filed the response before the requested" deadline.  Br. at 15. However, such a policy would enable a respondent to effectively set its own deadline by filing so close to the deadline that Commerce cannot respond, and, as long as it meets its own proposed deadline, its submission must be accepted.  This would invite anarchy and gamesmanship—more so than TKT's counsel apparently contemplated under the current rules.  *See* Br. at 12 ("The gambling claim would have to consider that Commerce might have rejected an earlier filed extension request . . . .  Then it would have been better for experienced counsel to file an extension at the last minute to hope to get at least to 8:30am next morning, to gain more time, as

the only hope.  That is not a gamble.  It is a considered, well-founded judgment call.").  This Court should reject TKT's suggestion that Commerce is required to provide respondents a blank check on deadlines for last minute extension requests.

TKT also argues that *Dongtai Peak* stands for the proposition that its due process rights were violated.  *See* Br. at 16.  This argument similarly fails because the Federal Circuit has explicitly held that "Commerce's rejection of untimely-filed factual information does not violate a respondent's due process rights when the respondent had notice of the deadline and an opportunity to reply."  *Dongtai Peak*, 777 F.3d at 1353; *see also PSC VSMPO*, 688 F.3d at 761–62 (the respondent had the opportunity to put forth evidence supporting its proposed accounting methodology but failed to do so, and therefore the respondent was not deprived of due process). TKT knew the deadline, which had been extended multiple times at TKT's requests, and TKT had the opportunity to respond accordingly.  TKT's failure to do so does not violate TKT's due process rights.

Next, TKT contends that its last-minute extension request—filed 70 minutes before the deadline—qualified as enough time for Commerce to recognize that a filing had been made, consider the request through the proper channels, decide on its disposition, and draft, file and put on the record its response prior to 5:00 p.m.  Br. at 15–16.  TKT points to no evidence in the record of this being the case.  Indeed, as explained above, Commerce does not automatically grant extension requests because the law requires that Commerce determine whether good cause exists.  Moreover, TKT's argument presumes that it should have received an extension as a matter of course, notwithstanding the language in the *Final Rule* discouraging such filings and the fact TKT had already received two extensions.

This Court was recently presented with similar circumstances and questions concerning whether Commerce abused its discretion by prioritizing the need for finality over the agency's obligation to determine the most accurate CVD margin. *See Bebitz Flanges Works Private Ltd. v. United States*, 433 F. Supp. 3d 1297, 1305 (Ct. Int'l Trade 2020) (*Bebitz* (*CVD*)). In *Bebitz (CVD)*, the respondent, represented by the same counsel as TKT, filed its fourth extension request 20 minutes before the 5:00 p.m. deadline. *See id*. at 1302. Similarly, Commerce was unable to respond, and the default deadline became 8:30 a.m. the next workday. *Id*. Additionally, the *Bebitz (CVD)* respondent also missed that deadline and instead filed its response at 10:24 a.m. *See id*. The Court was not persuaded by Bebitz's arguments that its untimely filing must be accepted, and the Court reiterated that it is not for the respondent "to establish Commerce's deadlines or dictate to Commerce whether and when Commerce actually needs the requested information." *Id*. at 1305 (citing *Dongtai Peak*, 777 F.3d at 1352). Finally, this Court held that "Commerce's regulation, 19 C.F.R. § 351.302(b) and (c), provides the agency with substantial discretion whether to grant or deny an extension request and, particularly in light of the multiple extensions Commerce did provide, Bebitz fails to establish that Commerce abused its discretion or otherwise acted unlawfully in denying Bebitz's requests for additional extensions." *Id*. at 1305–06; s*ee also Yantai Timken*, 31 CIT at 1754-55, 521 F. Supp. 2d at 1371–72.

Although *Dongtai Peak* is controlling and *Bebitz (CVD)* is persuasive authority, TKT cites several cases that not only predate the Federal Circuit's 2015 decision in *Dongtai Peak*, but the facts of which predate Commerce's *Final Rule*, which specifically clarifies Commerce's policy concerning extension requests. *See* Br. at 19–22 (citing, *e.g.*, *Artisan Mfg. Corp. v. United*

*States*, 978 F. Supp. 2d 1334, 1345 (Ct. Int'l Trade 2014) (wherein the underlying investigation,

the questionnaire response, and the final determination all predated Commerce's *Final Rule*)).

### iv.   Commerce's Decisions In Other Proceedings Do Not Prevent It From Rejecting TKT's Submission Here

TKT argues that Commerce "violate{d} its own precedent" because it has, in the past,

granted extension requests later than TKT's 3:50 p.m. request.  Br. at 22–25.  It cites to one such

decision, and extrapolates "bedrock legal principles" from it, such as "Commerce can decide an

extension request filed at 4:30PM of {sic} the deadline date."  Br. at 23.  But TKT provides no

authority for the proposition that just because Commerce "can" grant an extension in certain

scenarios, means it *must* grant them in others, nor does it explain why the timing of the filing is

the only dispositive factor.

Indeed, is well established that Commerce is not bound by its actions in prior

proceedings, because each proceeding "is a separate exercise of Commerce's authority that

allows for different conclusions based on different facts in the record."  *Qingdao Sea-Line

Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014).  "Commerce may change its

conclusions from one review to the next based on new information and arguments, as long as it

does not act arbitrarily and it articulates a reasonable basis for the change."  *Qingdao*, 766 F.3d

at 1387.  As explained above, Commerce has provided reasons, all rooted within Commerce's

regulations, court precedent, and Commerce's practice, as to why its rejection of TKT's untimely

and incomplete submission was supported by substantial evidence.  *See also* Decision

Memorandum at 6–21.  "Strict enforcement of time limits and other requirements is neither

arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation for its

decision."  *Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1331 (Ct. Int'l Trade

2015).

In any event, TKT overlooks that the circumstances of the extension in the proceeding it cites were very different from the circumstances here. *See Ripe Olives from Spain* (C-469-818), April 30, 2020, Bar Code 3970287-01. For example, that submitting party: already uploaded most of its submission, but was having issue with one attachment, had promptly contacted Commerce personnel about the technical issue, and, most importantly, was able to file *before* 8:30 a.m. the next business day. *Id.*

*     *     *

Accordingly, Commerce's rejection of TKT's incomplete and untimely submission was within its discretion, and in accordance with law.

### III. Commerce's Decision To Apply Facts Available With A Total Adverse Inference Is Supported By Substantial Evidence And Is In Accordance With The Law

#### A. Legal Framework

In the course of an investigation or review, "the burden of creating an adequate record lies with interested parties." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (internal quotation marks, alterations, and citation omitted). If Commerce determines that "necessary information is not available on the record" or "an interested party or any other person . . . withholds information that has been requested by {Commerce}," "fails to provide such information by the deadlines . . . or in the form and manner requested," "significantly impedes a proceeding," or "provides such information but the information cannot be verified," then Commerce is permitted to use "facts otherwise available" in making its determinations. 19 U.S.C. § 1677e(a); *see* 19 C.F.R. § 351.308 (providing for "{d}eterminations on the basis of the facts available"). Commerce uses "facts otherwise available" to "fill in . . . gaps" in the administrative record. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003).

"Further, if an interested party 'fail{s} to cooperate by not acting to the best of its ability to comply with a request for information,' then Commerce 'may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available,' commonly referred to as AFA." *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1295–96 (Fed. Cir. 2021) (alterations in original) (quoting 19 U.S.C. § 1677e(b)); *see* 19 C.F.R. § 351.308 (similar). "Because Commerce has no subpoena power, AFA is an essential investigative tool . . . ." *Id.* (internal citations and quotation marks omitted). To avoid AFA, "interested parties" must "cooperate . . . to the best of {their} ability," 19 U.S.C. § 1677e(b), meaning they must "do the maximum {they are} able to do," *Nippon Steel*, 337 F.3d at 1382. This standard "does not require perfection and recognizes that mistakes sometimes occur," but "it does not condone inattentiveness, carelessness, or inadequate record keeping." *Id.*; *see also id.* at 1383 (explaining that, "{w}hile intentional conduct, such as deliberate concealment or inaccurate reporting," may show "a failure to cooperate, the statute does not contain an intent element").

**B.   Commerce Reasonably Applied Facts Available**

Pursuant to 19 U.S.C. § 1677e, Commerce determined that resort to facts available was reasonable because TKT failed to completely and timely submit its Initial Questionnaire response, such that necessary information was not on the record, and therefore inhibited Commerce's ability to conduct the proceeding. Decision Memorandum at 15–21, 25. Notably, TKT does not challenge Commerce's resort to facts available under 19 U.S.C. § 1677e(a), but only appears to challenge Commerce's use of adverse facts available. *See* Br. at 33–34. In any case, Commerce's resort to facts available was in accordance with the law. "When § 1677e(a) applies, Commerce may use as facts available any information or inferences which are reasonable to use under the circumstances to make the applicable determination or substitute for the missing information." *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1252

(Fed. Cir. 2009) (internal quotation marks and citation omitted).  Further, "Commerce may thus employ record evidence to arrive at a margin calculation in the absence of complete data, even if the evidence does not necessarily replace the precise data missing, subject to the constraint that the facts and the manner in which they are employed are reasonable."  *Id*. at 1258 (quoting *Nippon Steel Corp. v. United States*, 25 C.I.T. 1192, 1196 (2001)).

Second, in accordance with the statute, after Commerce determined that facts available were warranted, Commerce further found that the application of an adverse inference was necessary because TKT had failed to put forth its maximum effort to cooperate to the best of its ability.  Decision Memorandum 24–27; *Nippon Steel 2003*, 337 F.3d at 1382; *POSCO v. United States*, 353 F. Supp. 3d 1357, 1364 (Ct. Int'l Trade 2018).  Pursuant to the Court's direction, "{a} respondent's failure to cooperate to 'the best of its ability' is 'determined by assessing whether {it} has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries.'"  *POSCO*, 353 F. Supp. 3d at 1364; *accord Nippon Steel*, 337 F.3d at 1382.

Commerce reasonably found that TKT failed to cooperate by not acting to the best of its ability to comply with the request for information for several reasons.  Decision Memorandum at 26–27.  First, TKT's untimely submission took place after TKT was already granted multiple extensions of the original deadline, as well as provided additional time pursuant to the *Final Rule*.  *Cf. Bebitz (CVD)*, 433 F. Supp. 3d at 1305–06 (explaining that Bebitz failed to establish that Commerce abused its discretion or acted unlawfully in denying its request for extensions "particularly in light of the multiple extensions Commerce did provide").  Second, TKT was represented by knowledgeable counsel, well-versed in AD/CVD proceedings before Commerce, throughout the entirety of the investigation, and who therefore should have had the ability to

meet its deadlines or request an extension, when as late as seven hours prior to the deadline, he

had not received the necessary materials from his client.[5]   Third, TKT failed to mitigate its

technical problems by contacting either the official in charge of the investigation or the ACCESS

help desk before the close of business.[6]   *Cf. Neo Solar Power Corp. v. United States*, 190 F.

Supp. 3d 1255, 1261 (Ct. Int'l Trade 2016) (respondent "could have ameliorated harm caused by

technical problems by" contacting "the ACCESS Help Desk before the deadline expired to

receive assistance with a response to the technical problem").   Finally, when TKT did submit the

response to the Initial Questionnaire, after the 8:30 a.m. September 16 deadline, it was

incomplete.   Accordingly, Commerce reasonably determined that TKT did not act "the best of its

ability" and put forth the maximum effort, and therefore resort to facts available with an adverse

inference was appropriate.

TKT contends that an adverse inference may not be drawn from failing to provide a

questionnaire response, and that "more is required."   *See* Br. at 33.   TKT selectively quotes from

---

[5] TKT objects to the characterization of counsel as "experienced," calling it a "backhanded 'compl{i}ment,'" which is "no substitute for substantial evidence." Br. at 13. However, the point of the statement was to demonstrate that TKT had a fair opportunity to comply with the deadlines because its counsel knew or should have known of the importance of seeking an extension earlier. *See* Decision Memorandum at 27 ("given TKS/TKT's retention of experience{d} counsel, TKS/TKT's inability to comply with the instructions in the Initial Questionnaire to contact Commerce officials in case of difficulty filing a submission, to file an extension request early enough to consider it, or to file a complete response by 8:30 a.m. the following business day in accordance with the *Final Rule* is inexplicable, and evidence of the respondent's failure to act to the best of its ability.").

[6] TKT does not dispute this failure, but argues that attempts to contact Commerce or the ACCESS Help Desk would have been futile because that "is not what {those entities} do or assist with." Br. at 13–14. However, TKT does not explain this statement or provide any citations to the record. Moreover, TKT appears to state that counsel *did* attempt to call Commerce but, only after the close of business. *See* Br. at 14. After TKT submitted the extension request it is unclear why its counsel did not attempt to contact Commerce in the 70 minutes before the 5:00 p.m. deadline to explain that there was a technical issue. *See* Decision Memorandum at 16.

*Nippon Steel Corp. v. United States*, 118 F. Supp. 2d 1366, 1377 (Ct. Int'l Trade 2000), but

omits that this decision was reversed by the Federal Circuit.  The Federal Circuit in *Nippon Steel*

*2003* determined that:

> Compliance with the 'best of its ability' standard is determined by assessing
> whether respondent has put forth its maximum effort to provide Commerce
> with full and complete answers to all inquiries in an investigation.  While the
> standard does not require perfection and recognizes that mistakes sometimes
> occur, it does not condone inattentiveness {or} carelessness . . . .

*Nippon Steel 2003*, 337 F.3d at 1382; *see also Mukland Ltd. v. United States*, 767 F.3d 1300,

1307 (Fed. Cir. 2014) (holding that the respondent did not cooperate to the best of its ability

when, after five supplemental questionnaires, it failed to respond with the complete information

requested).  As previously demonstrated, TKT failed to put forth its maximum effort to provide

Commerce with the requested information by the deadline.  Here, TKT failed on multiple fronts:

it failed to follow instructions in the Initial Questionnaire to contact Commerce officials in case

of difficulty filing a submission, it failed to file an extension request early enough for it to be

considered, and it failed to file a its response by 8:30 a.m. the following business day pursuant to

the *Final Rule*.  Further, even after TKT's untimely submission was received by ACCESS, it was

still incomplete.  *See* Commerce's Rejection Letter, PD 238.  Therefore, Commerce properly

concluded based on substantial record evidence that TKT failed to act to the best of its ability

and that use of facts available with an adverse inference was appropriate.

Next, TKT argues that Commerce should not "impose adverse inferences on a respondent

company for the actions of its government."  Br. at 34.  TKT relies on *Clearon Corp. v. United*

*States* and *Guizhou Tyre Co. v. United States*, however, both of these cases are inapposite.  Br. at

34.  First, in those cases, it was the respective government entity that did not cooperate or

withheld requested information—not the respondents.  *See Clearon Corp. v. United States*, 474

F. Supp. 3d 1339, 1343-44 (Ct. Int'l Trade 2020); *Guizhou Tyre Co. v. United States*, 415 F.

Supp. 3d 1402, 1403 (Ct. Int'l Trade 2019).  Second, both cases relate to China's Export Buyer's

Credit Program, a subsidy program that was not reviewed by Commerce in the underlying

investigation.  Finally, in those cases, this Court determined that there was evidence in the record

that the cooperating respondents did not use the program, and Commerce did not adequately

explain why it could not verify non-use of the program due to the government of China's failure

to provide the requested information.  *See Clearon, 474* F. Supp. 3d at 1349–54; *Guizhou Tyre*,

415 F. Supp. 3d at 1403–05.

In this case, by contrast, it was the respondent—not the government—that had failed to

provide necessary information "by the deadlines . . . or in the form and manner requested," 19

U.S.C. § 1677e(a).  And, as explained in the Decision Memorandum, Commerce's CVD analysis

requires certain information that can only be provided from the respondents that produce and/or

export the goods in question, including whether a benefit was received.  *See* Decision

Memorandum at 46.  Generally, the information provided by the government only provides

information concerning other aspects of the analysis (contribution and specificity).  *Id.*

Next, TKT argues that the fact there is "only one Kazakh silicon metal producer"

somehow means that an adverse inference cannot apply.  Br. at 34.  TKT provides no authority

for this proposition, and we are aware of none.

In another part of the brief, TKT appears to argue that Commerce "made no effort to

meet its statutory mandate to calculate accurately the subsidy margin." Br. at 9.  However, a

court "cannot set aside application of a proper administrative procedure because it believes that

properly excluded evidence would yield a more accurate result if the evidence were considered."

*PSC VSMPO*, 688 F.3d at 761.  This is because, as explained by the Statement of Administrative

Action (SAA) accompanying the Uruguay Round Agreements Act, the purpose of the adverse

facts available provision is "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."  SAA, H.R. Doc. No. 103-316, 870, reprinted in 1994 U.S.C.C.A.N. 4040, 4199 (1994).

Accordingly, because Commerce did not fully receive TKT's information and TKT had not acted to the best of its ability, Commerce was authorized to "apply any of the countervailable subsidy rates," including "the highest such rate or margin, based on the evaluation by {Commerce} of the situation that resulted in {the agency} using an adverse inference in selecting among the facts otherwise available."  19 U.S.C. § 1677e(d)(2).  In doing so, Commerce was not required to "estimate what the countervailable subsidy rate . . . would have been if the interested party found to have failed to cooperate . . . had cooperated . . . {or} demonstrate that the countervailable subsidy rate . . . used by {Commerce} reflects an alleged commercial reality of the interested party."  19 U.S.C. § 1677e(d)(3).

## IV.   Commerce Did Not Abuse Its Discretion When It Determined That Mississippi Silicon LLC Did Not Interfere With TKT's Ability To File Its Questionnaire Response

On September 8, Commerce received a record submission from Mississippi Silicon LLC, requesting that Commerce disqualify and require the immediate withdrawal of TKT's counsel because of an alleged conflict of interest.  *See* Mississippi Silicon's Letter, Silicon Metal from Kazakhstan: Request to Disqualify Squire Patton Boggs (US) LLP as Counsel to Tau-Ken Temir LLP, dated September 8, 2020, PD 45 (Mississippi Silicon's Request to Disqualify).  Mississippi Silicon believed that there was a direct and ongoing conflict of interest because TKT's counsel previously represented Mississippi Silicon LLC in a 2017 investigation before the International Trade Commission, a case also concerning silicon metal from Kazakhstan.  *Id.*  Based on the record information available, however, Commerce determined that there did not appear to be a conflict of interest.  *See* Commerce's Memo, "Silicon Metal from the Republic of Kazakhstan:

21

Representation of Tau-Ken Temir LLP by Squire Patton Boggs," dated October 6, 2020, PD 247 (Representation Memo).

TKT argues that Mississippi Silicon's conflict-of-interest claim lacked "even colorable merit" and thus "Petitioner counsel necessary had some other intent, where the only one possible intent seems to be a litigious one to disrupt TKT's ability to participate in the questionnaire process." Br. at 27–29.  TKT argues that Mississippi Silicon succeeded in disrupting its ability to meet its September 15, 2020, deadline, but Commerce found "no evidence that petitioner's allegation of a conflict of interest interfered with the respondent's ability to respond . . . in a timely manner."  Decision Memorandum at 31.  This determination is supported by substantial evidence.

First, TKT's disruption should have been negligible based on the fact that it was not blind-sided by this allegation:  record information indicates that the Mississippi Silicon first raised its concerns directly with TKT's counsel on August 13, 2020, more than a month before TKT's response was ultimately due.  *See* Mississippi Silicon's Request to Disqualify at 6–7.

Second, although Mississippi Silicon filed its request to disqualify on September 8th and TKT filed its second request for an extension of time on September 9th, TKT's request did **not** reference the conflict-of-interest claim, but instead predicated its request for additional time on workload, unfamiliarity with the Commerce's procedures, COVID-19, and overseas clients.  *See* TKT's Letter, "Silicon Metal From Kazakhstan," dated September 9, 2020, PD 47 (Second TKT Extension Request).  If the conflict-of-interest claim posed a disruption to TKT's ability to meet the same deadline TKT was requesting to extend for other reasons, one would reasonably expect at least some mention of this additional burden.

Third, the detrimental effect of Mississippi Silicon's allegation also is absent from TKT's third extension request filed September 15, 2020.  *See* TKT's Third Extension Request, PD 220. Thus, it is only after its untimely and incomplete filing that that TKT began to argue that responding to the request for disqualification impaired its ability to finish preparing and timely submitting the Initial Questionnaire response.

Fourth, TKT's brief explicitly admits that "TKT and its counsel did not" "divert significant resources from the preparation of the questionnaire response to respond to the petitioners' disqualification submission."  Br. at 32.  But then TKT claims that time was "diverted as the companies internally assessed the conflict claim, seeking to understand it, what it meant and whether they had confidence continuing with" their counsel.  *Id.*  However, TKT provides no citations to the record for this proposition, and attorney statements are not evidence. *See In re Budge Mfg. Co.*, 857 F.2d 773, 776 (Fed. Cir. 1988) (attorney statements are "no{t} evidence").

In short, the record does not reflect that Mississippi Silicon's conflict-of-interest claim interfered with TKT's ability to meet its September 15, 2020, deadline—much less make a demonstration that is "so compelling that no reasonable factfinder" could reach the same conclusion as Commerce, *Elias-Zacarias*, 502 U.S. at 483–84.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's determination and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                                    /s/ Bret R. Vallacher
                                               BRET R. VALLACHER
Jared M. Cynamon                               Trial Attorney
Attorney                                       Commercial Litigation Branch
Office of the Chief Counsel                    Civil Division
   for Trade Enforcement and Compliance        Department of Justice
U.S. Department of Commerce                    P.O. Box 480
Washington, D.C.                               Ben Franklin Station
                                               Washington, D.C.  20044
                                               Telephone: (202) 616-0465
                                               Facsimile: (202) 305-2062
                                               Email: bret.r.vallacher@usdoj.gov

Dated September 27, 2021                       *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the word-count limitation, in that it contains 7727 words according to the word-count function of the word-processing software used to prepare the memorandum, including text, footnotes, and headings.

/s/Bret Vallacher

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of September, 2021, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

<u>/s/Bret Vallacher</u>