## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| Tau-Ken Temir LLP et. al., | ) ) ) | **PUBLIC DOCUMENT** |
| Plaintiff, | ) ) | Before: Leo M. Gordon, Judge<br>Court No. 21-00173 |
| Ministry of Trade and Integration of the<br>Republic of Kazakhstan | ) ) ) ) | |
| Plaintiff-Intervener | ) ) | |
| v. | ) ) | |
| United States | ) ) | |
| Defendant. | ) ) | |
| Mississippi Silicon LLC and Globe Specialty<br>Metals Inc. | ) ) ) | |
| Defendant-Intervenor | ) ) | |

Reply Brief of Plaintiff Tau-Ken Temir LLP et. al.

Peter Koenig
Squire Patton Boggs
2550 M Street NW, Suite 500
Washington DC 20036
Counsel to Tau-Ken Temir LLP et. al.

October 22, 2021          peter.koenig@squirepb.com; 202 669 1901

# TABLE OF CONTENTS

**Page**

I.    COMMERCE UNLAWFULLY FAILED TO CONSIDER THE RECORD AS A WHOLE .................................................................................................... 1

II.    COMMERCE UNLAWFULLY LIMITS ITS DISCRETION, UNDERMINING ACHIEVING THE STATUTORY MANDATE TO CALCULATE ACCURATELY CVD MARGINS ................................................................... 2

III.    COMMERCE'S REJECTION OF A TIMELY REQUESTED EXTENSION TO ADDRESS *INTER ALIA* COMPUTER FILE CORRUPTION ISSUES IN A FILING  MADE WITHIN TWO HOURS OF THE NEXT DAY OF THE DEADLINE IS UNLAWFULLY ARBITRARY AND CAPRICIOUS .......................... 3

IV.    COMMERCE VIOLATES COURT DECISIONS ............................................. 4

V.    COMMERCE'S DEPARTURE FROM ITS PRACTICE IS ARBITRARY AND CAPRICIOUS ...................................................................................... 5

VI.    AGENCY COUNSEL'S POST HOC CLAIMS ARE IMPERMISSIBLE ....................... 6

VII.    ADVERSE INFERENCES ARE UNSUPPORTED AND NOT IN ACCORDANCE WITH LAW .......................................................................... 6

VIII.    MEANINGLESS TRUISMS .............................................................................. 8

IX.    DEFENDANT-INTERVENOR'S MERITLESS CONFLICT CLAIM INTERFERED WITH COMMERCE'S INVESTIGATION ............................................ 9

X.    DEFENDANT-INTERVENOR'S EXHAUSTION CLAIM LACKS MERIT .............. 11

XI.    REQUESTED RELIEF ................................................................................ 11

Plaintiffs Tau-Ken Temir LLP (TKT) and JSC NMC Tau-Ken Samruk (TKS)[1] and

Plaintiff-Intervener the Ministry and Trade and Integration of the Republic of Kazakhstan (MTI)

answer the response briefs of Defendant United States (Def. Br.) and Petitioner (in the

proceedings below) Defendant-Interveners Mississippi Silicon and Globe (Def-Inv. Br.) to TKT

and MTI's July 21, 2021 Opening Brief (TKT Br.). The response briefs confirm that the

contested U.S. Department of Commerce (Commerce) decision is not supported by the requisite

statutory substantial evidence and are otherwise not in accordance with law, and that only a

negative CVD determination and termination of the investigation is warranted by law.

## I.    Commerce Unlawfully Failed To Consider The Record As A Whole

The opposition does not dispute that TKT timely requested an extension several days

before the questionnaire due date here that Commerce denied as to the full request extension that

would have made the questionnaire filing timely.  TKT Br. at 3. Nor does the opposition dispute

that Commerce could have fully granted that TKT extension for the stated reasons therein and

not have hindered the timely completion of the investigation.  The record as a whole must be

considered to assess if Commerce's decision is unsupported by the requisite statutory substantial

evidence and otherwise not in accordance with law. Def. Br. at 3; TKT Br. at 3.  Yet the United

States fails to mention, much less address, the full record as to the above, including as to its

claim as to Commerce not granting the third extension request because of two prior extensions.

Def. Br. at 12 & 17.  Inadequately partially granting prior extensions (TKT Br. at 5) does not

mean much, nor does the United States explain or support otherwise. Commerce never said,

much less supported, that it gave TKT sufficient time to answer the questionnaire, or that it could

---

[1] Throughout the proceeding, TKT, TKS and all their cross-owned entities have been collectively referred
to as TKT, including by Commerce.  Decision Memorandum at 2 (same Decision Memorandum as
referenced in TKT Br. at 1); TKT Br. at 1.

not have granted more time and still met its statutory mandate to calculate accurately the CVD margin.

## II.     Commerce Unlawfully Limits Its Discretion, Undermining Its Statutory Mandate To Calculate Accurately CVD Margins

Commerce's <u>Final Rule</u> states that Commerce will not adopt rules that are "inflexible to permit" Commerce to effectively and fairly administer the antidumping (AD) and countervailing duty (CVD) laws – i.e., Commerce will not adopt rules that unnecessarily hamstring/prevent Commerce discretion to achieve its statutory mandate to calculate accurately subsidy (and dumping) margins.  TKT Br. at 8. In defending Commerce's decision here, agency counsel for the United States explicitly embraces a legal principle that Commerce may adopt rules and practices that preclude Commerce discretion from effectively and fairly achieving its statutory mandate to calculate accurately the subsidy margin. See Def. Br. at 8. That position is not stated in the <u>Decision Memorandum</u> and so is impermissible post hoc argument by agency counsel. Further that agency counsel position is directly contrary to the Federal Circuit's decision in <u>NTN Bearing Corp. v. United States,</u> 74 F. 3d 1204, 1207 (Fed. Cir. 1995) that Commerce may not adopt rules that unnecessarily undermine its discretion as to actions to achieve the statutory mandate to calculate accurately subsidy (and dumping) margins.  But agency counsel takes this untenable position. See Def. Br. at 8-9.

In any event, contrary to agency counsel claims, there is nothing that says Commerce cannot decide extension requests even after the deadline, where meritorious and supportive of statutory objectives.  TKT Br. at 8-9. .Indeed, Commerce does. See below and TKT Br. at 22-26. The opposition cites nothing otherwise.

Finally, just because respondents automatically get to 8:30am the next day (Def. Br. at 9) as to an extension request that Commerce did not decide does not address the issue of a valid

extension request where more time is needed than that. The opposition fails to address that. Commerce has hamstrung itself into not being able to so decide that, such that its action is unlawful per <u>NTN Bearing</u>.

The United States claims that even if Commerce has time to consider a particular questionnaire response, like here, and still meet its statutory mandate, it need not do so because it does not want to be burdened by claimed last minute requests. Def. Br. at 10-11. While Commerce says this is a broad policy rationale applicable to all, when challenged (TKT Brief at 10-11), Commerce fails to support ever applying or even stating the stated rationale here to anyone else (beyond TKT), much less uniformly to all. TKT Br. at 10-11. Actually, Commerce has not. See below discussion of Commerce practice.

And Commerce does decide extension request after the deadline, meaning no additional burden. Again, see below discussion of Commerce practice. The opposition does not dispute any of these points.

### III. Commerce's Rejection Of A Timely Requested Extension To Address *Inter Alia* Computer File Corruption Issues In A Filing Made Within Two Hours Of The Next Day Of The Deadline Is Unlawfully Arbitrary And Capricious

The opposition admits that TKT's final extension request was timely before the deadline. Def. Br. at 7. It was based on *inter alia* unanticipated computer file corruption issues and other computer/technical issues (TKT Br. at 5; <u>Decision Memorandum</u> at 16) in received documents, that it turned out could not be easily resolved, such that an extension request was immediately made when known should do so. TKT filed its questionnaire response within two hours (10:11am. <u>Decision Memorandum</u> at 15) of Commerce's opening the next day after the deadline and within the one day that TKT timely requested. The opposition does not dispute, much less with any substance, that the undersigned counsel filed the extension request as soon as it was clear that could not resolve *inter alia* the computer file corruption issues as to the undisputed

3

"completed questionnaire response" (<u>Decision Memorandum</u> at 16) received by counsel at 10:58am (id.) before the 5:00PM filing deadline and that counsel was only obliged to request an extension when it knew it needed an extension because meeting the 5:00PM deadline was not possible. <u>Decision Memorandum</u> at 25. Indeed, the United States has now withdrawn Commerce's unsupported claim (TKT Br. at 11-13) that the undersigned counsel gambled by delaying filing the extension request, as a basis for Commerce denying the extension request.

One does not give Commerce corrupted computer files as to a questionnaire response and say fix them.  The respondent answering the questionnaire has to do that  Agency counsel post hoc unsupported and unexplained argument otherwise is wrong. Any such claim makes no sense. If a computer file is ultimately found unfixable corrupt (as here), one has to go back to the source of the document, not Commerce.

The opposition fails to address any of the above points raised in TKT's Brief (at 4-6 and 13-14), including that the undersigned counsel followed all procedures stated by Commerce to follow as to the third extension request.

### IV.    Commerce Violates Court Decisions

Commerce says that this Court's decision in <u>Artisian</u> pre-dates Commerce's <u>Final Rule</u>. Def. Br. at 14.  Commerce does not explain why that matters, and especially under the circumstances here.  <u>Artisian</u> was based on the statute and law as to abuse of discretion, not a regulation.  TKT Br. at 19-22. Judicial precedent thereafter (listed in TKT Br. at 19, fn. 24) follows <u>Artisian</u>. And the Federal Circuit is explicit that, if a Commerce rule unnecessarily violates the statutory mandate to calculate accurately the subsidy (or dumping) margin, as Commerce does here, then the Commerce rule must be waived.  TKT Br. at 21.  The opposition does not dispute that.

The United States cites Dongtai Peak. Def. Br. at 7 and 10-13. It actually also pre-dates the Final Rule. Id.. So per United States' argument, it is irrelevant. That said, Dongtai Peak involved a respondent to a Commerce questionnaire that filed an untimely extension request after the deadline, seeking an extension because there was a national holiday a week before the deadline, where the respondent should have requested an extension then. Dongtai Peak said that a respondent cannot cite technical difficulties as to such a filing when the issue is that should not have filed the extension request after the deadline and but rather should have filed it at least a week before the deadline, since the basis of the extension was a national holiday long known, and before the holiday, and that was the basis of the extension request.  That is not our case. TKT Brief at 15-16.  The opposition fails to address this, though noted in TKT's opening brief. Beyond that, the United States fails to address any of the many other reasons stated in the TKT Brief (at 15-16) on why Dongtai Peak is inapposite.

The United States cites Bebitz.  Def. Br. at 13 & 17.  Yet again, the United States fails to address any of the many reasons discussed in TKT's Brief (TKT Brief at 18-19) why Bebitz is inapposite.  In any event, the issues raised here, including as to Commerce's Final Rule,  were not argued in Bebitz, and thus not addressed in Bebitz.

### V.     Commerce's Departure From Its Practice Is Arbitrary And Capricious

The opposition, nor did Commerce in the contested decision, do not dispute TKT's many cited cases (TKT Br. at 22-25) where Commerce granted an extension less compelling than here. The United States only took issue with just one cited case, claiming that only it was distinguishable. Def. Br. at 15. That fails to address the many others in the TKT's Br. at 22-25, Commerce decisions inconsistent with Commerce's treatment of TKT that Commerce does not dispute.  Indeed, during the time of this litigation, Commerce has continued to accept many extension requests filed even closer to the 5:00 PM deadline in situations less compelling than

5

here, which extension requests cite similar technical filing difficulties for which they ( the respondents) recognized they (not Commerce, as Commerce recognized) could only address and where Commerce decided, even after the deadline and failed to mention any general policy that precluded Commerce from doing so.  These Commerce decisions are attached to this reply brief.

## VI.   Agency Counsel's Post Hoc Claims Are Impermissible

Agency counsel claims on its own that the TKT questionnaire response filing was rejected as incomplete.  Def. Br. at 2, 14-15 & 18.  Agency counsel cites the original Commerce rejection letter.  In the Commerce proceedings below, TKT responded  (TKT Brief at 7) to that claim in initial Commerce rejection letter, demonstrating that it was unsupported by substantial evidence and otherwise not in accordance with law and that in fact the response was complete.  Agency counsel fails to mention, much less address, that cited record evidence.

Commerce did not deny or otherwise address the above record facts, including in its final decision. Rather Commerce stated that its final decision was <u>not</u> based on completeness of the filed TKT questionnaire response, nor were Commerce's prior decisions thereon.  <u>Decision Memorandum</u> at 9 & 20-21 (completeness issue is "moot"; "we did not rely on" completeness "as a basis of rejection … In fact, we did not reference it at all.").  TKT noted all that in its Brief. TKT Brief at 7.  No response brief disputes these facts.  Agency counsel's incompleteness claim is impermissible post hoc argument, indeed rejected by Cmmerce in the contested decision.  See above.

## VII.   Adverse Inferences Are Unsupported And Not In Accordance With Law

*TKT:* For reasons discussed above, there is no evidence, much less substantial evidence, that the undersigned TKT counsel did not act to the best of its ability as to the TKT questionnaire response filing.

But that is the sole basis for Commerce's application of adverse facts available (AFA) as to TKT.  Thus, AFA is unsupported by evidence, much less substantial evidence. AFA is not permitted where one acts to the best of one's ability. Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (The "best of ability" standard means "one's maximum effort," as in "do your best" under specific circumstances. In this regard, "Parties make mistakes and "perfection is not required and mistakes will sometimes occur" but that does not support AFA.)   If Commerce's claim is that the undersigned counsel had bad judgment (unsupported by the record), then adverse facts are still unlawful because the undersigned counsel acted to the best of its ability and there is no record evidence (much less substantial evidence) otherwise.

*Government of Kazakhstan (GOK):* TKT is the only Kazak producer of subject silicon metal and thus subject to, and affected by, this CVD action. TKT Br. at 1 & 34. There are no other Kazakh producers of subject silicon metal. *Id.*  The opposition does not dispute any of this. Def.-Inv. Br. at 6-7 & 20; Def. Int. Br. at 7.

When Commerce imposes prohibitive AFA on the sole producer in a country (here TKT, as to Kazakhstan), and does so irrespective of what its government (here, GOK) does as its questionnaire response  (i.e., respond or not respond), there is no incentive for the respondent government (here, GOK) to cooperate.  The opposition does not dispute that, or even address it. Indeed, for this reason, even Petitioner Defendant-Intervener admits as much, when it says that: "If anything, the collateral effects of AFA on the GOK here are less 'unfortunate' because TKT is not a cooperating respondent." Def. Int. Br. at 7. That is our point. Since Commerce unlawfully imposed AFA on TKT, by such Commerce action, there was no incentive for GOK to cooperate because either way (cooperate or not cooperate) it is the same result – i.e., the lone Kazakh producer of subject silicon metal is subject to a trade-stopping 160% CVD margin.  TKT

Br. at 34.   Ironically, it is Commerce's own unlawful actions as to TKT that caused non-cooperation by GOK  Id.  No one disputes that either.

The purpose of AFA is to encourage cooperation.  Def.-Inv. Br. at 21; Decision Memorandum at 26 & 50.  There is no purpose to impose AFA on GOK under the circumstances, because it cannot possibly encourage cooperating, rendering AFA unlawful because the sole reason for it to be imposed, is to encourage cooperation, does not exist.

In short, the lone case that Commerce cites in its Decision Memorandum that it was lawful to impose AFA on GOK was inapposite because it is based on  where there are other producers of the subject product in the subject country. There, there is not. TKT discussed this in its Brief. TKT Brief at 34. The opposition does not dispute.

A common saying, if all one has is a hammer, everything looks like a nail. Having hammered TKT with AFA, Commerce thinks it can AFA hammer GOK into cooperation. Not reasonable or supported for the above reasons.  The United States' response brief reflex reaction boilerplate AFA lecture that all Commerce has is the AFA hammer misses the point and feeds into our above point.  If Commerce had acted in a lawful manner and accepted TKT's questionnaire response, only then would GOK have a reason to cooperate and AFA serve its purpose.  Ironically, Commerce caused GOK non-cooperation via its unlawful AFA on TKT, Commerce working against statutory purpose of AFA.

(An aside, it is really of huge U.S. arrogance that it would treat a foreign country and government in the way done here).

## VIII.   Meaningless Truisms

The United States' brief is replete with meaningless boilerplate truism and lecture – i.e., , a respondent should not assume or expect an extension or dictate deadlines, Commerce is entitled to aggressively enforce trade law, TKT's counsel is knowledgeable and experienced,

respondents have notice of the deadlines and consequences, a respondent should not expect its extension request to be granted, etc.  Def. Br. at 8-14 & 17.

Such statements beg the question. They fail to address, and distract from, our stated reasons why the contested decision is not supported by the requisite substantial evidence or otherwise in accordance with law. Even the United States admits that Commerce must still <u>not</u> abuse its discretion, <u>not</u> act in an arbitrary and capricious manner, be reasonable, and reach a decision otherwise in accordance with law. Def. Br. at 3 & 14.  The United States' lecture here does not advance resolution.

### IX.   Defendant-Intervenor's Meritless Conflict Claim Interfered With Commerce's Investigation

Utlimately, the opposition does not actually dispute that Defendant-Intervener Petitioner's conflict claim lacked merit, as to the core issue thereon. As discussed in TKT's Brief (TKT Br. at 28-30), for a conflict to exist, there must be an overlap between the matters counsel did for two different clients that create the conflict. The opposition fails to allege, much less support and explain, how the undersigned counsel representation of TKT as to whether TKT received Kazakh subsidies overlaps with any of the prior matters that did not involve whether the Kazahk Government subsidized TKT. Only if there is such overlap is there even potentially a conflict of interest.  Commerce dismissed Petitioner's conflict claims on that basis (i.e., no overlap) and found no Petitioner Defendant-Intervenor claim in that regard even worth mentioning, much less addressing.  See cites at Def. Br. at 20-21; Def.-Int. Br. 8-15; <u>Decision Memorandum</u> at 30-31. That itself demonstrates that there was not even colorable merit to the conflict of interest claim. Nor was there any evidence of temporal overlap in representations, much less substantial evidence thereof. <u>Id</u>.

As to Petitioner Defendant-Intervenor interference in the Commerce investigation, as discussed in TKT's Brief (TKT Br. at 30-33),  the opposition does not dispute the certified explanatory statements of TKT itself and its counsel that more time was consumed in addressing Petitioner Defendant-Intervener conflict claims than the two hours that Commerce claims TKT's questionnaire was late. No one disputes this, much less with persuasive explanation. Nor does the opposition dispute that, given the lack of merit of Petitioners' conflict claim, there was no reason for the undersigned TKT counsel to advice TKT thereof  earlier and distract TKT from the huge time intensive effort to answer Commerce's questionnaires, as to which TKT was pursuing flat out from the start., as it should and no choice. (Incidentally, the contested final Commerce decision repeatedly says the undersigned counsel is experienced and knowledgeable, also emphasized in the United States reply brief). Then, in the week that TKT's questionnaire response was due, Petitioner Defendant-Intervenors, to the undersigned counsel's huge and unansiticipated surprise, given prior discussions with Petitioner Defendant-Intervenor counsel on why the claim had no merit, filed the conflict claim on the record for all to see, including TKT, that Commerce should immediately disqualify TKT counsel from representing TKT, which filing Commerce was immediately made aware that it had to address quickly to keep the investigation on track, but Commerce did not. The opposition does not dispute these record facts. Def. Br. at 21.

The United States claims that such Petitioner action had no impact are unsupported and unpersuasive. The Decision Memorandum at 31-33 fails to address these issues in particular raised below so anything agency counsel says is impermissible post hoc.  The problem with conflict claims is that they undermine relationships (counsel with client) and sometimes the damage is not apparent for a while, especially in COVID times, where there is no in-person

presence done before, that can be decisive in such situations. For this reason, the <u>Decision Memorandum</u> stated (at 32) that "TKS/TKT is not precluded from now claiming that the petitioners' request for disqualification hindered its ability to submit a timely questionnaire response." We did so.[2]

## X.     Defendant-Intervenor's Exhaustion Claim Lacks Merit

The United States did not claim failure to exhaust administrative remedies. All the issues raised by TKT and GOK were raised before Commerce. Commerce had the opportunity to address them. No one disputes that fact, not even Defendant-Intervenor. So the point of the exhaustion doctrine that the agency must first have the opportunity to consider the issue has been met. Defendant-Interveners' cites (at 5) and undeveloped argument thereon does not address, much less show, otherwise. Actually, Defendant-Intervener does not even discuss this thresholde issue of this judicial discretionary exhaustion doctrine in its undeveloped argument.

## XI.     Requested Relief

TKT has been subject to prohibitive trade-stopping 140% to 160% CVD duties for almost a year now based on the contested Commerce decision.  Commerce put itself in a position of not having information, as discussed above.  The CVD statute provides that an affirmative determination may only be reached and by the statutory deadline only if there is information that a reasonable person would find sufficient to so find.  There was not here, given the circumstances. A reasonable person would not have done what Commerce did.  A negative final

---

[2] As to Petitioner Defendant-Interveners prior misuse of confidential information in U.S. AD/CVD trade proceedings and misconduct leading to termination of its prior antidumping actions, that we cited and provided the specific record thereon (TKT Br. at 35, fn. 66). Commerce just agreeing with Petitioner without going into the record or pursing for a decision supported by the record evidence is no surprise. Commerce just being Commerce. Our sole point here is that Petitioner Defendant-Interveners have singularly fomented distrust of the U.S. system in the above ways, that rendered even more damaging their since found, uncontested meritless conflict claims. To Petitioners, we say "stop this." Don't try to manipulate from a perceived position of power, influence.

CVD determination should issue. TKT Br. at 34-35.  The United States does not dispute this remedy.  (We assume, assuming that this Court holds that Commerce's rejection of TKT's questionnaire response was unlawful.)

Petitioner Defendant-Intervenors claim in their response brief that they have some bits of information as to alleged subsidies and therefore an affirmative Commerce determination should still issue, even though the voice of TKT and GOK has been unlawfully silenced or rendered irrelevant.  That is not a reasonable basis for an affirmative Commerce determination supported by the requisite substantial evidence and in accordance with law or the statute, given that for reasons discussed and not contested the Petitioner, Defendant Intervenors, it is unreasonable to unlawfully not allow the accused to participate, and then reach a decision against the accused. In its undeveloped argument, Defendant-Intervener fails to support how its proposed remedy is lawful and permitted by the statute under the circumstances.

Throughout the Commerce investigation, Petitioner  Defendant-Intervenor repeatedly, strongly pushed Commerce to take the unlawful actions taken. Now, in their reply brief, Petitioner Defendant-Intervener essentially walks away from the matter, abandoning Commerce, leaving Commerce to defend the actions.

We appreciate the Court's consideration of the above.

Respectfully submitted,


*/s/ Peter Koenig*

Peter Koenig
Squire Patton Boggs
Counsel to Tau-Ken Temir LLP

## WORD COUNT CERTIFICATE

The undersigned counsel certifies that the Word count of this brief is 3882 words and so within this Court's word limit – i.e., under 40% of the words in the response briefs. 5250 = 0.4 x (7722 + 5403).

*/s/ Peter Koenig*
Peter Koenig

October 22, 2021