## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| Tau-Ken Temir LLP et. al.,<br><br>Plaintiff,<br><br>Ministry of Trade and Integration of the<br>Republic of Kazakhstan<br><br>Plaintiff-Intervener<br><br>v.<br><br>United States<br><br>Defendant.<br><br>Mississippi Silicon LLC and Globe Specialty<br>Metals Inc.<br><br>Defendant-Intervenor | **PUBLIC DOCUMENT**<br><br>Before: Leo M. Gordon, Judge<br>Court No. 21-00173 |

### PLAINTIFF TKT REPLY TO  DEFENDANT AND DEFENDANT-INTERVENOR OBJECTIONS TO PLAINTIFF TKT'S MOTION TO AMEND REPLY BRIEF APPENDIX

Plaintiffs Tau-Ken Temir LLP (TKT) and Ministry of Trade and Integration of the Republic of Kazakhstan (collectively TKT) hereby answer the October 28, 2021 Defendant United States (ECF 41) filing and the October 29, 2021 Defendant-Intervenors Globe Specialty Metals, Inc. and Mississippi Silicon LLC filing (ECF 43).  TKT withdraws its October 23, 2021 motion to correct the attachment to its reply brief (ECF 40) and stands by its timely filed initial October 22, 2021 reply brief (ECF 39). Counsel in reading the replies and reflecting realizes that is what it should have done from start. However, actually, the opposition responses thereto further confirm that the contested decision of the U.S. Department of Commerce ("Commerce") is not supported

by substantial evidence and otherwise not in accordance with law. The opposition replies further expose gaping holes in their overall defense. And given the accusatory claims in the replies, it would also seem a reply is in order.  As below indicates, TKT counsel is not withdrawing its motion due to anything opposing counsel said or lack of a desire that these Commerce decisions not be considered. TKT counsel wishes to avoid a distraction from the core issue of the unlawfulness of Commerce decision. In particular:

      1. The United States (at its page 3 of its filing) and Defendant-Intervenor (at pages 4-5 of its filing) claim that the Commerce decisions offered in TKT's reply brief should have been in TKT's July 21, 2021 opening 56.2 brief (ECF 33), such that they could address them then.  As stated in TKT's opening 56.2 brief (at 22-26), the contested Commerce decision is unlawful – i.e., where Commerce said that it is not bound to be consistent with its other extension decisions as to extensions because they <u>might</u> be distinguishable and thus will not even entertain if they are <u>in fact</u> distinguishable, as also said in United States filing here at its pages 3-4. Commerce thus did not address any of TKT's cited decisions in the proceedings before Commerce that was treating TKT inconsistently from others. See TKT's 56.2 opening brief at pages 22-26. That is unlawful, arbitrary and capricious conduct.  See, e.g., <u>Tecom v. United States</u>, 21 CIT 352, 355 (Ct. Int'l Trade April 4, 1997) (In antidumping investigations, must treat parties similar as to time given for filings); <u>El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dept. of Health and Human Serv.</u>, 300 F. Supp. 2d 32, 42 (D.D.C. 2004) ("[I]f an agency treats similarly situated parties differently, its action is arbitrary and capricious in violation of the APA."); <u>Etelson v. Office of Personnel Management</u>, 684 F.2d 918, 926 (D.C. Cir. 1982) ("Government is at its most arbitrary when it treats similarly situated people differently.")

Contrary to the Commerce decision being defended, in its response brief to TKT's opening 56.2 brief, the United States sought for the first time to distinguish TKT's cited Commerce extension precedent, but only one of the many cited precedent. Agency counsel is engaged in impermissible post hoc argument because the contested Commerce decision did not do that.  See U.H.F.C Co. v. United States, 916 F. 2d 689, 700 (Fed. Cir. 1990) ("Post hoc rationalizations of agency actions, first advocated by counsel in court may not serve as the basis for sustaining agency's determination."); Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962) ("The courts may not accept . . . counsel's post hoc rationalizations for agency action; . . . an agency's discretionary order [must] be upheld, if at all, on the same basis articulated in the order by the agency itself . . . .").

Counsel did not previously submit the decisions in its October 23, 2021 motion to substitute the attachment to its October 22 reply brief because in its July 21, 2021 56.2 opening brief the issue was solely Commerce's refusal to even consider any of its decisions to grant extensions  to others and that it was under no legal obligation to do so.  In its reply brief, the United States for the first time sought to distinguish one case that TKT offered and not the others. Again, that is impermissible post hoc agency counsel argument to save an unlawful Commerce decision.  But that opened the door for a response to cite the many and continuing Commerce decisions supportive of granting TKT the requested one day extension. Only then was the issue first raised by the Government to actually consider other Commerce decisions and whether they were distinguishable for then TKT to respond. That was TKT counsel's reason for doing so in its October 22 reply brief and its October 23 motion to substitute the attachment thereto.  The issue was first raised in the United States' response brief, so of course TKT's first

response is in its reply brief.  Before then Commerce's position was that its other extension decisions were irrelevant.

In any event, the opposition cannot claim prejudice because anything it says on this issue is impermissible post hoc argument anyway.  The whole issue of actually attempting to distinguish Commerce's precedent was only attempted by the Government for the first time in the United States' reply brief. Commerce, in its contested decision, refused to do so.

In any event, there is irony in the opposition claiming prejudice from not being able to answer because it was not in the TKT 56.2 opening brief. The opposition did not reply at all to much the argument in TKT's opening brief, argument that is outcome determinative – i.e., various specific arguments that have to do with Commerce's regulations and court decisions as to lawful conduct.

2. That said, here, at its pages 4-5, agency counsel did reply to some of the offered Commerce precedent in the attachment in TKT's October 23, 2021 motion to substitute that attachment.

Agency counsel said (at its pages 4-5) that in one case that the respondent called Commerce on the telephone in particular as opposed to via ACCESS. Such a claim is impermissible post hoc argument as it was not the stated basis of Commerce's decision as to TKT. See July 21, 2021 TKT Br. at 6-7 & 13-14 (ECF 33).  Anyway, such a claim is contrary to law and the record of this case as to such law (Id.) – i.e., Commerce regulations and questionnaires instruct that, to be considered, all extension requests must be in writing and submitted on Commerce's ACCESS, TKT argument in its opening brief which the opposition did not address in their response briefs.  Agency counsel is now defending Commerce's decision on a basis that violates Commerce's regulations and questionnaire language – i.e., agency

counsel is saying that a party should violate Commerce's regulations and questionnaire instructions to file extension requests in writing on ACCESS and instead make a phone call.

Agency counsel post hoc attempted to distinguish another case saying TKT did not get an extension. That impermissibly assumes the conclusion (circular reasoning) that because TKT did not get the extension it was lawful to deny the extension.

Agency counsel attempted to post hoc distinguish another case saying that Commerce granted the extension before the deadline begs the question because as to TKT Commerce says that it does not address extension requests close to the deadline for general policy reasons that apply to all cases (TK Br. at 10-11) and yet here Commerce did so where the request was made closer to 5:00PM than TKT's.

And so on. But again all the above is agency counsel impermissibly doing post hoc what Commerce should have done in the first place.

More generally, again, Commerce rejected TKT's extension request in issue saying that it was last minute and as a general policy Commerce does not consider last minute extension requests even if it would have had time to complete the investigation after granting the extension. TKT Br. at 10. TKT challenged the opposition to cite even one other case where Commerce has done that other than TKT. In reply, the opposition cited none. The substitute attachment in TKT's Oct. 23, 2021 motion had a plethora of cases where extensions were requested closer to the 5:00PM deadline than TKT did and were granted. Agency counsel had the benefit of those cases. He still in his post hoc claims cannot name even one Commerce case where Commerce applied the above rationale that it applied to TKT.

3. Counsel attached the following decision to its October 22 reply brief – i.e., Commerce, Issues and Decision Memorandum (IDM), Certain Amorphous Silica from China, A- 570-038,

Jan. 17, 2017, accompanying the final determination therein at 82 Fed. Reg. 8399 (Jan. 25, 2017) at Comment 6, pages 23-25, though counsel attached all pages. TKT cited this case in its opening 56.2 brief. See TKT Br. at 23, as Defendant admits (at 3). The opposition did not dispute that decision in their response briefs.

Now the opposition seeks to untimely dispute it – i.e., <u>after</u> their response briefs when they should have done so, but failed to.  In <u>Certain Amorphous Silica from China</u> at the above pages, Commerce states its practice to accept extension requests where (a) a party submits the extension request the same day as the due date and for less than 24 hours, (b) that a party need only file an extension request as soon as it knows that it is needed, (c) an extension request is a day late, but it was for only one day, (d) where a  timely extension request failed to fully articulate the full basis of the extension request which was clarified later by the requestor after the deadline; but that (e) Commerce rejects an extension request made 6 days after the deadline based on events 4 days before the deadline. Defendant (at 6) embraces <u>Certain Amorphous Silica from China</u> but then only mentions (e) and fails to note the rest of the Commerce decision, (a) to (d). But TKT requested its extension for one day before the deadline and immediately when it was known. So "e" does not support rejection of TKT's extension request. Further, in <u>Certain Amorphous Silica from China</u>, Commerce went through all its other decisions on extensions cited by the respondent as pertinent, one-by-one, as to whether the particular Commerce extension decision applied, to insure consistent, non-arbitrary and capricious, lawful decision-making. Commerce violated all aspects of the above practice as to TKT.

TKT counsel likes  <u>Certain Amorphous Silica from China.</u>  Yet the United States (at its page 2) and Defendant-Intervenor (at their page 6) accuse TKT counsel of some unspecified nefarious conduct to conceal it since TKT counsel thinks it not helpful.  That is yet another

example of the continuing opposition approach that personal attack and innuendo against

opposing counsel can substitute for the substantial evidence rule and a decision in accordance

with law.

     The United States does not explicitly seek removal of the attachment to TKT's original

October 22 reply brief.  Defendant-Intervenor does.  Either way, it is a cited legal decision in

TKT's July 21 opening brief that did not have to be attached to the reply brief.  So it does not

make a difference whether it was attached or not and TKT counsel will continue to push Certain

Amorphous Silica from China irrespective.

     4. Defendant (at their pages 2-3) and Defendant-Intervenor (at their pages 5-6) claim that

Commerce extension decisions in other cases were not part of the factual administrative record

here.[1] But here we are citing law – i.e., Commerce decisions.  Commerce decisions are law, not

facts, and can be cited as law, not facts. For undisputed legal authority thereon, see TKT Br. at

22-23, fn. 35.  The opposition had no response to that authority. The opposition cited authority is

inapposite as it does not involve citing Commerce decisions. Rather it involves stating actual

facts (not law) that are not in the administrative record. We are not adding facts to the

administrative record because we are just citing law –i.e., Commerce decisions.

     5. Defendant-Intervenor says (at 5) that the original attachment and replacement

attachment in TKT October 22 and 23 filings avoids the Word limit and calls for their removal.

Actually, if one moves the pertinent parts of the attachment/s to the text of the reply brief – i.e.,

the just Commerce decision cite and the specific on point narrative, which is only a hundred

---

[1] In the record referenced by Defendant-Intervenor there, TKT counsel noted to Commerce an extension decision
that Commerce had just made in another case and after briefing had closed, asking for Commerce to consider but
with no further argument.  Counsel has seen this done many times,  Notable was Commerce's rejection of the offer
on inter alia grounds that Commerce's decisions in other cases are "facts," not "law" or "decisions", and the
deadline for factual submissions apply.  TKT objected on the basis cited in TKT's opening brief here. See TKT Br.
at 23 (Such action to treat Commerce decisions as facts, not law, and subject to deadlines to submit facts, is contrary
to Commerce's own regulations and decisions of this Court).

words or so -- the reply brief would still  be well below the Word limit, as TKT's reply brief was several thousand words below the Word limit. The reason TKT counsel initially had the attachment/s was because those Commerce decisions (Commerce's own words on the page) speak for themselves as to why Commerce unlawfully refused to consider its own precedent in the contested Commerce decision here. It was felt that seeing is believing. Visual is powerful. A picture is worth a thousand words.

6. In its October 23, 2021 motion filed immediately when the down load issue was realized and to avoid confusion by all, TKT counsel said that it could convey the views of the other parties when heard.  After three attempts to get a reply from the other parties, and at the end of the fourth day thereafter, TKT counsel finally heard that they opposed TKT's motion. They declined to give reasons for their opposition. Upon finally hearing from opposing counsel at the end of the fourth day, the next day TKT counsel asked for further clarification of the email to all parties from the Court as to correcting the attachment to the motion. Counsel was then to file its amended motion that day.  But then the United States proceeded to file its opposition early, despite the email from the Court that TKT counsel was going to file a corrected motion for amendment. Counsel was then going to file the motion to amend the attachment after now knowing the basis the United States' objection, though concerned that then doing so would be premature as it then seemed that a premature opposition from Defendant-Intervenor would happen soon, which happened Friday night.  TKT counsel makes this filing now. Defendant-Intervener delay claims as to TKT counsel (at 6) fail to mention, much less discuss, the above events known to them.

We appreciate the Court's attention to this matter.

*/s/ Peter Koenig*

Peter Koenig
Squire Patton Boggs
2550 M Street NW, Suite 500
Washington DC 20036
Counsel to Tau-Ken Temir LLP et. al.

November 1, 2021                                    peter.koenig@squirepb.com; 202 669 1901

## CERTIFICATE OF COMPLIANE WITH WORD COUNT LIMITATION

I hereby certify that the foregoing reply was prepared in accordance with the Word count function of Word and that it is 2642 words.

*/s/ Peter Koenig*

Peter Koenig
Squire Patton Boggs
2550 M Street NW, Suite 500
Washington DC 20036
Counsel to Tau-Ken Temir LLP et. al.

November 1, 2021                                    peter.koenig@squirepb.com; 202 669 1901