C-834-811<br>
Remand Redetermination<br>
Court No. 21-00173<br>
**Public Document**<br>
E&C/OV:  MB

*Tau-Ken Temir LLP and JSC NMC Tau-Ken Samruk, v. United States*,
**Court No. 21-00173 (CIT September 30, 2025)**
**Silicon Metal from the Republic of Kazakhstan**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination in accordance with the remand order of the U.S. Court of International Trade (CIT) in *Tau-Ken Temir LLP and JSC NMC Tau-Ken Samruk, v. United States* (CIT September 30, 2025) (*Remand Order*).  These final results concern Commerce's *Final Determination* in the countervailing duty (CVD) investigation of silicon metal from Kazakhstan covering the period of investigation (POI) January 1, 2019, through December 31, 2019.[1]

Following the determination and remand of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) that Commerce's decision to reject Tau-Ken Temir LLP (TKT)'s submission was an abuse of discretion,[2] the Federal Circuit ordered Commerce to accept TKT's submission and proceed with the CVD investigation.[3]  Accordingly, the CIT ordered this action remanded to Commerce for further proceedings consistent with *Tau Ken*.[4]

---

[1] *See Silicon Metal from the Republic of Kazakhstan:  Final Affirmative Countervailing Duty Determination*, 86 FR 11725 (February 26, 2021) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Tau-Ken Temir LLP v. United States,* 147 F.4th 1363 (Fed. Cir. 2025) (*Tau Ken*).
[3] *Id.*, 147 F.4th at 1379.
[4] *See Remand Order*.

## II. BACKGROUND

### A. Commerce's *Final Determination*

On July 27, 2020, Commerce published the notice of initiation of the CVD investigation of silicon metal from Kazakhstan.[5] In the *Initiation Notice*, we stated that, because the U.S. Customs and Border Protection (CBP) data did not indicate a large number of producers/exporters of silicon metal during the POI, we would calculate company-specific subsidy rates for each publicly-identifiable company identified in the CBP data.[6] We therefore selected, as mandatory respondents, JSC NMC Tau-Ken Samruk (TKS) and TKT.[7] On July 8, 2020, Commerce issued its Initial Questionnaire to the Government of Kazakhstan (GOK) and requested that the GOK forward the questionnaire to TKS and TKT.[8] TKS/TKT[9] submitted a combined response to the affiliation section of the Initial Questionnaire on August 6, 2020[10] and provided responses to the subsequent supplemental affiliation questionnaires in August[11] and September 2020.[12] On August 27, 2020, we extended the deadline for TKS/TKT and other affiliated parties' initial section III questionnaire response at the request of TKS/TKT until

---

[5] *See Silicon Metal from the Republic of Kazakhstan: Initiation of Countervailing Duty Investigation*, 85 FR 45173 (July 27, 2020) (*Initiation Notice*).
[6] *Id.*, 85 FR at 45175-76.
[7] *Id.*, 85 FR at 45176.
[8] *See* Commerce's Letter, "Investigation of Silicon Metal from the Republic of Kazakhstan: Countervailing Duty Questionnaire," dated July 23, 2020 (Initial Questionnaire).
[9] In the underlying investigation, Commerce determined TKS and TKT to be cross-owned. *See Silicon Metal from the Republic of Kazakhstan: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination,* 85 FR 78122 (December 3, 2020) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 6 and 10. As a result, we hereinafter refer to these entities as TKS/TKT.
[10] *See* TKT's Letter, "Silicon Metal from Kazakhstan," dated August 6, 2020.
[11] *See* TKT's Letter, "Silicon Metal from Kazakhstan," dated August 18, 2020
[12] *See* TKT's Letter, "Silicon Metal from Kazakhstan," dated September 8, 2020.

2

September 10, 2020.[13]  On September 9, 2020, at the request of TKS/TKT, we again extended the deadline to submit the initial section III questionnaire responses until September 15, 2020.[14]

Shortly before the deadline of 5:00 p.m. on September 15, 2020, at 3:50 p.m., Commerce received a third request for an extension from TKS/TKT.[15]  Due to the proximity of the extension request to the actual deadline, Commerce was unable to respond to the extension request by the deadline.  Therefore, the deadline became 8:30 a.m. the following day, September 16, 2020, in accordance with the *Final Rule*.[16]  TKS/TKT began the submission of its supplemental questionnaire response at 5:31 a.m. September 16, 2020, and continued filing its submission through 10:10 a.m. that morning.[17]  Because TKS/TKT did not meet the revised deadline of 8:30 a.m. on September 16, 2020, Commerce rejected TKS/TKT's September 16, 2020, submission as untimely pursuant to 19 CFR 351.302(d).[18]

On December 3, 2020, Commerce published the *Preliminary Determination*.  Commerce determined that full questionnaire responses from TKT/TKS and other affiliated parties were necessary to determine the degree to which these companies were provided countervailable subsidies under section 771(5) of the Tariff Act of 1930, as amended (the Act), that may be attributed to TKS/TKT in accordance with 19 CFR 351.525(b).[19]  TKS/TKT's failure to provide the requested information in a timely manner resulted in a deficient record lacking necessary

---

[13] *See* Memorandum, "Silicon Metal from the Republic of Kazakhstan:  Extension of Time to Submit Section III Questionnaire Response," dated August 27, 2020.
[14] *See* Memorandum, "Silicon Metal from the Republic of Kazakhstan:  Extension of Time to Submit Initial Section III Questionnaire Response and KazSilicon Questionnaire Response," dated September 9, 2020.
[15] *See* TKS/TKT's Letter, "Silicon Metal from Kazakhstan," dated September 15, 2020.
[16] If Commerce is unable to notify a party requesting an extension of the disposition of that request by 5:00 p.m. on the due date, then the submission is due by 8:30 a.m. on the next working day.  *See Extension of Time Limits*, 78 FR 57790, 57792 (September 20, 2013) (*Final Rule*).
[17] *See* Commerce's Letter, "Countervailing Duty Investigation of Silicon Metal from the Republic of Kazakhstan: Rejection and Removal of Submission from the Record," dated October 1, 2020.
[18] *Id.*; *see also* Memorandum, "Rejection of Untimely Filed Response," dated October 1, 2020.
[19] *See Preliminary Determination* PDM at 6, unchanged in *Final Determination*.

information, and Commerce deemed TKS/TKT's failure to be a failure to cooperate to the best of its ability.[20] Accordingly, Commerce determined that the application of facts otherwise available with an adverse inference (AFA) was warranted under sections 776(a) and 776(b) of the Act.[21] On February 26, 2021, Commerce published the *Final Determination*, and, as AFA, assigned TKS/TKT a total final subsidy rate of 160.00 percent *ad valorem*.[22]

### B. Federal Circuit Decision and Remand Order

On August 4, 2025, the Federal Circuit issued its decision in *Tau Ken*. In *Tau Ken*, the Federal Circuit held that Commerce must accept TKS/TKT's rejected September 16, 2020, submission and proceed with the CVD investigation. Specifically, the Federal Circuit found that Commerce abused its discretion by rejecting TKS/TKT's submission despite TKS/TKT's extension request and technical issues while attempting to upload its submission.[23] On September 30, 2025, the CIT issued its *Remand Order*, directing Commerce to continue the CVD investigation in accordance with the findings in *Tau-Ken*.[24]

### C. Commerce's Draft Results of Redetermination

Commerce released its Draft Results of Redetermination on December 23, 2025, and established December 30, 2025 as the deadline for interested parties to submit comments on the Draft Remand.[25] No interested parties commented on the Draft Remand. Therefore, our analysis here does not differ from the analysis in the Draft Remand.[26]

---

[20] *Id.*
[21] *Id.*
[22] *See Final Determination* IDM at 56.
[23] *See Tau Ken*, 147 F.4th at 1375-78.
[24] *See Remand Order* at 1.
[25] *See* Draft Results of Redetermination Pursuant to Court Remand, *Tau-Ken Temir LLP and JSC NMC Tau-Ken Samruk, v. United States*, Court No. 21-00173 (CIT September 30, 2025), dated December 23, 2025 (Draft Remand).
[26] *Id.*

4

### III.     ANALYSIS

Pursuant to the *Remand Order*, we have proceeded with the CVD investigation of silicon metal from Kazakhstan with respect to TKT/TKS. On November 19, 2025, Commerce requested that TKT refile the September 16, 2020, section III questionnaire response that was previously rejected by Commerce, and established a deadline to submit the requested information by November 21, 2025.[27] On November 21, 2025, at 2:30 pm and again at 4:15 pm, TKS/TKT filed a request for clarification and extension of the deadline established in Commerce's November 19 request.[28] On November 21, 2025, Commerce clarified the specific documents it was requesting and extended the deadline for TKS/TKT's submission to November 24, 2025. On November 24, 2025, TKS/TKT filed a notice of withdrawal of participation in this proceeding.[29]

Because TKS/TKT declined to submit the documents required to continue the CVD investigation, and given the Federal Circuit's decision that rejecting TKS/TKT's initial filing from the record was improper, Commerce sought to recover the rejected documents and upload them to the record itself. However, after reviewing our own files, and investigating the issue with our Central Records Unit and the ACCESS technical team, we were unable to retrieve TKS/TKT's original September 16, 2020, submission, and, therefore, we were unable to add the missing information to the record. As a result, we are required to resort to facts available. Section 776(a) of the Act provides that Commerce shall, subject to section 782(d) of the Act, apply "facts otherwise available" if necessary information is not on the record or an interested party or any other person:  (A) withholds information that has been requested; (B) fails to

---

[27] *See* Commerce's Letter, "Court Ordered Remand:  Countervailing Duty Investigation of Silicon Metal from the Republic of Kazakhstan:  Request to Refile Questionnaire Response," dated November 19, 2025.
[28] *See* TKT's Letter, "TKT's First Clarification and Extension Request," dated November 21, 2025; *see also* TKT's Letter, "TKT's Second Clarification and Extension Request," dated November 21, 2025.
[29] *See* TKT's Letter, "Withdrawal of Participation," dated November 24, 2025.  As noted below, Commerce no longer has the response in our possession.

provide information within the deadlines established, or in the form and manner requested by Commerce, subject to subsections (c)(1) and (e) of section 782 of the Act; (C) significantly impedes a proceeding; or (D) provides information that cannot be verified as provided by section 782(i) of the Act.

Section 776(b) of the Act further provides that Commerce may use an adverse inference in selecting from among the facts otherwise available when a party fails to cooperate by not acting to the best of its ability to comply with a request for information. In so doing, Commerce is not required to determine, or make any adjustments to, a countervailable subsidy rate based on any assumptions about information an interested party would have provided if the interested party had complied with the request for information.[30] Further, section 776(b)(2) of the Act states that an adverse inference may include reliance on information derived from the petition, the final determination from the investigation, a previous administrative review, or other information placed on the record.

In *Nippon Steel*, the Federal Circuit held that, while the Act does not provide an express definition of the "failure to act to the best of its ability" standard, the ordinary meaning of "best" is "one's maximum effort."[31] Thus, according to the Federal Circuit, the statutory mandate that a respondent act to the "best of its ability" requires the respondent to do the maximum it is able to do. The Federal Circuit indicated that inadequate responses to an agency's inquiries would suffice to find that a respondent did not act to the best of its ability. While the Federal Circuit noted that the "best of its ability" standard does not require perfection, it does not condone inattentiveness, carelessness, or inadequate record keeping.[32] The "best of its ability" standard

---

[30] *See* section 776(b)(1)(B) of the Act.
[31] *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382-83 (Fed. Cir. 2003) (*Nippon Steel*).
[32] *Id.*, 337 F.3d at 1382.

recognizes that mistakes sometimes occur; however, it requires a respondent to, among other things, "have familiarity with all of the records it maintains," and "conduct prompt, careful, and comprehensive investigations of all relevant records that refer or relate to the imports in question to the full extent of" its ability to do so.[33]  Further, affirmative evidence of bad faith on the part of a respondent is not required before Commerce may make an adverse inference.[34]

Section 776(c) of the Act provides that, when Commerce relies on secondary information rather than on information obtained in the course of an investigation or review, it shall, to the extent practicable, corroborate that information from independent sources that are reasonably at its disposal.  Secondary information is "information derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under section 751{of the Act} concerning the subject merchandise."[35]  It is Commerce's practice to consider information to be corroborated if it has probative value.[36]  In analyzing whether information has probative value, it is Commerce's practice to examine the reliability and relevance of the information to be used.[37]  However, the SAA emphasizes that Commerce need not prove that the selected facts available are the best alternative information.[38]  Furthermore, Commerce is not required to corroborate any countervailing subsidy rate applied in a separate segment of the same proceeding.[39]

---

[33] *Id.*
[34] *See, e.g., Notice of Final Determination of Sales at Less Than Fair Value:  Circular Seamless Stainless Steel Hollow Products from Japan*, 65 FR 42985 (July 12, 2000); *see also Antidumping Duties; Countervailing Duties*, 62 FR 27296, 27340 (May 19, 1997); and *Nippon Steel*, 337 F. 3d at 1382-83.
[35] *See, e.g.*, Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. I (1994) (SAA) at 870.
[36] *Id*.
[37] *Id.* at 869.
[38] *Id.* at 869-870.
[39] *See* section 776(c)(2) of the Act.

Under section 776(d) of the Act, Commerce may use any countervailable subsidy rate applied for the same or similar program in a CVD proceeding involving the same country, or, if there is no same or similar program, use a rate for a subsidy program from a proceeding that the administering authority considers reasonable to use, including the highest of such rates. When selecting an AFA rate from among the possible sources of information, Commerce's practice is to ensure that the rate is sufficiently adverse "as to effectuate the statutory purposes of the adverse facts available rule to induce respondents to provide Commerce with complete and accurate information in a timely manner."[40] Commerce's practice also ensures "that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."[41]

Because TKS/TKT has withdrawn its participation from this inquiry, necessary information is not on the record, and TKS/TKT has withheld requested information, failed to provide such information, and significantly impeded the proceeding. The September 16, 2020 section III questionnaire response was not provided by TKS/TKT, and without TKS/TKT resubmitting the response, it is not possible for us to use the response as it is no longer in our possession. As discussed above, Commerce attempted to retrieve the rejected response, but we were unsuccessful. Therefore, we determine that the use of facts otherwise available is warranted in determining TKS/TKT's subsidy rate, pursuant to sections 776(a)(1) and (2)(A)-(C) of the Act. Moreover, we determine that TKS/TKT failed to cooperate by not acting to the best of its ability to comply with a request for information, and that adverse inferences are therefore

---

[40] *See, e.g., Drill Pipe from the People's Republic of China: Final Affirmative Countervailing Duty Determination, Final Affirmative Critical Circumstances Determination*, 76 FR 1971 (January 11, 2011); *see also Notice of Final Determination of Sales at Less Than Fair Value: Static Random Access Memory Semiconductors from Taiwan*, 63 FR 8909, 8932 (February 23, 1998).
[41] *See* SAA at 870.

warranted under section 776(b) of the Act to determine whether TKS/TKT received a benefit, and the amount of that benefit, for each program under investigation.

In deciding which facts to use as AFA, section 776(b) of the Act and 19 CFR 351.308(c)(1) authorize Commerce to rely on information derived from: (1) the petition; (2) a final determination in the investigation; (3) any previous review or determination; or (4) any information placed on the record. Commerce's practice when selecting an adverse rate from among the possible sources of information is to ensure that the result is sufficiently adverse "so as to effectuate the statutory purposes of the AFA rule to induce respondents to provide {Commerce} with complete and accurate information in a timely manner."[42]  Commerce's practice also ensures "that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."[43]  In the underlying investigation, we determined that 160.00 percent was the most appropriate subsidy rate to select for the application of adverse inferences, and we hereby incorporate and adopt that analysis and determination by reference for these final results of redetermination.[44]  Therefore, we continue to find 160.00 percent to be the appropriate subsidy rate to assign as AFA.

### IV.    FINAL RESULTS OF REDETERMINATION

In accordance with the *Remand Order*, Commerce proceeded with the CVD investigation of silicon metal from Kazakhstan. Due to TKS/TKT's withdrawal of participation and failure to cooperate in this remand proceeding, we have determined that the application of total AFA is

---

[42] *See, e.g.*, *Certain Frozen Warmwater Shrimp from Ecuador: Final Affirmative Countervailing Duty Determination*, 78 FR 50389, (August 19, 2013), and accompanying IDM at Section IV, "Use of Facts Otherwise Available and Adverse Inferences."
[43] *See* SAA at 870.
[44] *See Preliminary Determination* PDM; *see also Final Determination* IDM at 3-5 and 56.

warranted. Accordingly, we continue to find that assigning a subsidy rate of 160.00 percent *ad valorem*, based on total AFA, to TKS/TKT is appropriate.

1/14/2026

X _Chris J. Abbott_

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance